State ex rel. Sheldon v. Dahl, 150 Wis. 73.

STATE EX REL. SHELDON, Receiver, Appellant, vs. DAHL, State Treasurer, and another, Respondents.

*February 2—June 4, 1912.*

*State treasurer: Duty as to securities deposited by trust company: Breach of official bond: Action, by whom brought: Corporations: Dissolution: When existence ceases: Pleading: Demurrer: Action, at law or in equity? Statutes changing procedure: Application to pending cases.*

1. The duty of the state treasurer, under sec. 1791e, Stats. (Supp. 1906: Laws of 1905, ch. 504), to hold in trust the securities or cash deposited by a trust company, for the benefit of the depositors, creditors, and *cestuis que trustent* of such company, is an official duty whose faithful discharge is guaranteed by his official bond.

2. The duty in such case is one owing to individuals, and although the treasurer's bond runs to the state, yet where the attorney general has refused, on the ground that the state has no beneficial interest, to bring an action thereon to recover for breach of said duty, the action may be brought in the name of the state on the relation of the individuals who are beneficially interested.

3. The duty of the state treasurer, under said sec. 1791e, is to retain possession of the securities or cash mentioned "at all times *during the existence* of" the trust company; and up to the time

such company ceases to exist the duty is absolute, leaving no room for the exercise of judgment or discretion.

4. Where a corporation proceeds voluntarily to dissolve, its existence within the meaning of said sec. 1791e ceases when, but not until, certified copies of the resolution of dissolution have been duly filed and recorded as provided in sec. 1789, Stats. (Supp. 1906: Laws of 1905, ch. 507).

5. Although the absolute duty of the state treasurer to retain possession of the securities or cash deposited by a trust company ceases when, under said sec. 1789, Stats., the dissolution of such company is complete, yet, after that time he is still charged with the duties of a trustee in relation thereto. [Whether after that time he would be protected in case of a negligent surrender of the securities, if he acted in good faith, is not determined.]

6. A statute merely changing the procedure and not affecting any substantial or vested right—in this case sec. 2649a, Stats. (Laws of 1911, ch. 354), providing in effect that upon a general demurrer a complaint shall be sufficient if the facts stated entitle plaintiff to any relief, whether legal or equitable—may be applied to a case in the appellate court, though enacted after the decision in the trial court.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This is an appeal from an order sustaining a demurrer to the complaint. The action is in equity upon the official bond of the defendant *Dahl* as state treasurer, and is brought against *Dahl* and the surety upon the bond. The relator, *Sheldon,* is the receiver of the Wisconsin Savings Loan & Trust Company, a Wisconsin corporation (hereinafter called the Trust Company), appointed by the United States court for the Western district of Wisconsin in a winding-up action, and the other relators are holders of unpaid bonds issued January 6, 1906, by the Wisconsin Blue Grass Land Company, another Wisconsin corporation, which bonds, it is alleged, were underwritten before issuance by the Trust Company. It is alleged by the complaint in substance that the Trust Company contracted with the Land Company, at the time of underwriting the said bonds, that it would receive and col-

lect the securities upon which said bonds were based, consisting of mortgages and land contracts to an amount whose face value should be at least twenty per cent. in excess of the whole issue of bonds, and would pay the said bonds at maturity out of the proceeds of the securities so intrusted to it; that bonds to the amount of $67,000 are now outstanding; that the only securities turned over by the Land Company to the Trust Company under the provisions of said contract consisted of a land contract securing notes to the amount of $46,000 which was not in fact worth to exceed $15,000, and that the same has been dissipated and diverted to other uses by the officers of the Trust Company, leaving the bondholders of the Land Company unpaid. The complaint further sets forth the election of the defendant *Dahl* as state treasurer in November, 1908, and the execution and approval of his official bond with the *National Surety Company* as surety in December, 1908. It is there alleged that in May, 1906, the Trust Company deposited with the then treasurer of the state of Wisconsin approved first mortgages and bonds in the sum of $50,000, as required by sec. 1791e, Stats. (Supp. 1906: Laws of 1905, ch. 504), and that on March 1, 1909, the defendant *Dahl* as treasurer held such securities as the statutory deposit under said last named section;

"that on or about the 1st day of March, A. D. 1909, in violation of the rights of these relators, and all other creditors and bondholders similarly situated, and without their knowledge or consent, the said *Andrew H. Dahl* negligently surrendered all of the securities then on deposit with the said state treasurer, except a certain certificate of deposit of Bank of Hudson, No. 6088, dated February 13, 1909, in the sum of $5,000, which said certificate was held by the said *Andrew H. Dahl* as state treasurer and which was negligently surrendered subsequently by the said *Andrew H. Dahl,* on or about the 10th day of April, A. D. 1909. That said surrender was made in violation of the rights of these relators, and all other creditors and bondholders similarly situated, and without their knowledge or consent; that said $45,000 worth of securities were surrendered to Spencer Haven and M. A. Nye, purporting to

represent the said Wisconsin Savings Loan & Trust Company, and that the said *Andrew H. Dahl* received from the said Spencer Haven a receipt, a copy of which is hereto annexed, marked Exhibit I and made a part of this complaint. That said $5,000 certificate of deposit was surrendered to the said Wisconsin Savings Loan & Trust Company, or the officers of the said Wisconsin Savings Loan & Trust Company. That the said *Andrew H. Dahl* surrendered said securities on the presentation to him of· an *ex parte* affidavit signed by N. B. Bailey and W. H. Sherman, president and secretary respectively of the said Wisconsin Savings Loan & Trust Company, which said affidavit stated, in substance, that said Trust Company was dissolved; that it had no depositors; that the claims of all its creditors had been adjusted in full, and that it had been released and discharged from all trusts; that it owed no obligations; that its duties and business as a trust company had been fully performed and discharged and nothing remained to be done in the winding up of its affairs except a division of its assets among its stockholders; that all of the statements contained in said affidavit were false, and said *Andrew H. Dahl* would have ascertained that such statements were false had he made an investigation of the books and records of said Wisconsin Savings Loan & Trust Company or of the records in the office of the commissioner of banking of the state of Wisconsin, or had he made an investigation of the affairs of said Trust Company, or the affairs of the said Northern Blue Grass Land Company, or had he made any investigation, such as a reasonably prudent man would have done under like circumstances; that said *Andrew H. Dahl* made no investigation as to the truth of any of the matters contained in said affidavit, or any inquiry from the sources aforesaid or any other source; that after the surrender of $45,000 worth of securities, as aforesaid, said *Dahl* was informed that the statements contained in said affidavit were false; that thereafter said *Dahl* made no effort to secure the return of the securities already surrendered by him, nor any further inquiry as to the truth of the statements contained in said affidavit, or as to the affairs of the said Trust Company, but thereafter negligently and carelessly surrendered the remaining $5,000 in securities, as aforesaid; that in surrendering said securities said *Andrew H. Dahl* did not act as an ordinarily prudent per-

son would have acted under similar circumstances in the conduct of affairs of like magnitude and importance, and acted contrary to the advice of the commissioner of banking of the state of Wisconsin, whose duty it is by law to pass upon and approve the deposit of such securities, and acted contrary to the uses and practice which had been followed by officers of the state of Wisconsin in surrendering securities deposited with them, of which said practice said *Andrew H. Dahl* had knowledge."

The complaint further alleges that on said March 1, 1909, claims had been filed and allowed against said Trust Company, including claims founded on the bonds of the Land Company, to the amount of $137,417.05; that the assets of said Trust Company which have come to the hands or knowledge of the receiver do not exceed $5,000 in value; that the Land Company is insolvent; that the state treasurer has refused to account for the securities so deposited; and that the attorney general upon request has refused to institute an action in the name of the state. Judgment is demanded for an accounting of the securities so wrongfully surrendered, that all the creditors of the Trust Company and the bondholders of the Land Company be ascertained and interpleaded, and that the defendants be required to pay to the relator, *Sheldon,* a sufficient sum to pay said claims and costs.

Upon the argument in this court it was stipulated that a certified copy of the resolution of dissolution of the Trust Company, together with certificates showing the respective dates on which the same was filed in the office of the register of deeds of St. Croix county and in the office of the secretary of state, might be filed in this court and considered as though the same were fully alleged in the complaint. It appears by the papers subsequently filed in pursuance of this stipulation that a resolution of dissolution as required by sec. 1789, Stats. (Supp. 1906: Laws of 1905, ch. 507), was adopted by the stockholders of said corporation March 10, 1908, and that a copy thereof duly certified was filed in the office of the secre-

tary of state March 1, 1909, and recorded in the office of the register of deeds of St. Croix county March 2, 1909.

For the appellant there was a brief by *Richmond, Jackman & Swansen,* attorneys, and *Young & Stone* and *Sanborn & Blake,* of counsel, and oral argument by *S. T. Swansen* and *John B. Sanborn.*

For the respondent *Dahl* there was a brief by *Jones & Schubring,* and for the respondent *National Surety Company* a brief by *Miller, Mack & Fairchild;* and the cause was argued orally by *B. W. Jones* and *James B. Blake.*

The following opinion was filed April 3, 1912:

WINSLOW, C. J. Sec. 1791*e,* Stats., as amended by ch. 504, Laws of 1905, requires every trust company to deposit with the state treasurer not less than fifty per centum of its capital stock, nor more than $100,000 in cash, bonds, or first-mortgage securities on real estate, which "shall be held by the state treasurer in trust as security for the depositors and creditors of said corporation, and for the faithful execution of any trust which may be lawfully imposed upon and accepted by it." The section further provides that the securities may be from time to time withdrawn, "provided that securities or cash of the amount and value required by this section shall at all times *during the existence* of such corporation remain in the possession of the state treasurer for the purpose aforesaid."

These provisions unquestionably make it the official duty of the state treasurer to hold the securities or cash so deposited in trust, the beneficiaries of which trust are the depositors, creditors, and *cestuis que trustent* of the trust company. The treasurer's official bond upon which this action is brought runs to the state as obligee and is conditioned not only for the faithful discharge of the duties of his office, but also for the delivery to his successor in office, *or to any other persons au-*

*thorized by law to receive the same,* of all moneys, books, records, papers, and other articles and evidences belonging to said office. The duty to safely keep the securities in question is a duty whose faithful discharge is guaranteed by the bond just as fully as any other official duty. True, it is a duty in which neither the state nor the general public has any direct interest; it is to be performed for the benefit of a class and probably a very limited class of people, but it is none the less an official duty.

The first proposition urged in support of the demurrer is that the action is not brought by the proper parties, but must be brought by the state itself, represented by the attorney general. This objection must be overruled. The promise is made in form to the state, but, so far as this fund is concerned, it is entirely for the beneficial interest of third persons, and those third persons must (if they are to receive the full benefit of the promise) have some way of enforcing its provisions not dependent upon the will of others who have no beneficial interest in the promise. Such bonds running to the state or some public official as obligee, but securing the performance of duties owing only to individuals or classes of individuals, are quite frequent, and the general principle is that in the absence of express statutory provision it will be held that the statutory intent is to grant permission to the individual or class protected by the bond to use the name of the state, or official, as plaintiff in an action brought to recover for breach of such a duty. *Howard v. U. S.* 184 U. S. 676, 22 Sup. Ct. 543. Unquestionably the attorney general could bring the action without relator, and use the name of the state as plaintiff, because the state is for this purpose the trustee of an express trust (*State v. Wettstein,* 64 Wis. 234, 25 N. W. 34); but where, as here, the attorney general has refused, as he doubtless properly may, to bring the action because the state has no beneficial interest in it, there seems no good rea-

son which should prevent the bringing of the action in the name of the obligee on the relation of the parties beneficially interested.

Passing this preliminary question, we come to the merits. The respondents claim and the trial court held that the state treasurer was vested with a discretion or *quasi*-judicial power in deciding when the securities in question should be released, and that the complaint here shows affirmatively that he released the securities upon sworn proof that the company had been dissolved and paid all of its obligations. It is further claimed that the complaint shows that the treasurer's action was taken in good faith, and in the absence of bad faith or intentional malfeasance there can be no recovery.

The difficulty with this contention is that the statute lays down a perfectly certain and definite duty with regard to the custody of the securities up to the time of the dissolution of the corporation. There can be no mistake about the scope of that duty, no room for the exercise of judgment or discretion. The securities are required to remain in the possession of the treasurer for the trust purposes named "at all times during the existence of the corporation." Sec. 1791*e*, Stats. Now if the statute fixes a definite time at which the corporation ceases to exist, there can be no question of doubt under the statute as to the duty of the treasurer previous to that time.

It seems very clear that sec. 1789, Stats., fixes a very definite and certain limit to the existence of a corporation which, as in the present case, desires to voluntarily dissolve. There is no ambiguity or uncertainty in its provisions. The section prescribes the contents and manner of adoption of the resolution of dissolution, and requires a certified copy thereof to be recorded in the office of the register of deeds of the home county of the corporation, and a like copy to be filed in the office of the secretary of state. "Thereupon such corporation shall cease to exist except for winding up its affairs."

The corporation ceases to exist upon the recording and fil-

ing of the certified copies of the resolution and not before, and until that time the duty of the treasurer to keep possession of the securities is absolute. He had no judgment or discretion to exercise. The statute is his sole rule of action.

It now appears definitely that the resolution of dissolution, although filed with the secretary of state on March 1, 1909, was not recorded in the proper register's office until March 2, 1909. No dissolution occurred, therefore, until March 2d. The securities to the amount of $45,000 were released by the treasurer on March 1st,—hence the complaint clearly states a breach of the treasurer's duty as to this sum.

Sec. 1764, Stats. (1898), provides that all corporations which shall be voluntarily dissolved or whose existence shall be terminated in either of several ways named in the section shall continue to exist for three years thereafter for the purpose of prosecuting and defending actions, settling and closing up their business, conveying their property and dividing their capital stock, and for no other purpose. In the consideration of this case we have had some doubt whether it ought not to be held that the corporation exists within the meaning of sec. 1791e, *supra,* but we have concluded that it ought not to be so held. It is very evident that the securities may be needed in the closing up of the affairs of the corporation, and, if it were impossible to release them during the three years limited for the closing-up process, the very object sought to be attained by the deposit, namely, the protection and satisfaction of creditors of the corporation, might be seriously impeded and delayed.

The sum of the present holding is that in case of a trust corporation sought to be dissolved by voluntary proceedings under sec. 1789, *supra,* the treasurer's duty to retain the deposited securities is absolute up to the moment when, under the provisions of that section, the dissolution is complete, and after that time the treasurer remains in possession of the securities still charged with the duties of a trustee, but re-

lieved from the absolute mandate to retain possession. During this time if any court having jurisdiction of the subject matter and of the parties directs that the moneys be delivered over to an officer of the court, or to a third party, the treasurer will, of course, be protected in obeying such order; probably he would be protected also in releasing the funds without the order of a court if he act in good faith and exercise reasonable care and diligence. Whether he would be protected if he acted without reasonable care though still in good faith may be a question of some doubt, and inasmuch as it is not absolutely essential to a decision of this case at the present time, we do not decide it. So far as the $45,000 payment is concerned, we hold that a breach of the bond is stated.

The question whether the action should have been brought at law rather than in equity we find it unnecessary to decide. Even if wrongfully brought in equity, the defect can no longer be taken advantage of by general demurrer. Sec. 2649a, Stats. (Laws of 1911, ch. 354). While this law was passed since the decision below, we find no difficulty in applying it to the present case, as it merely changes the procedure and affects no substantial or vested right.

*By the Court.*—Order reversed, and action remanded with directions to overrule the demurrer to the complaint.

Vinje, J., took no part.

A motion for a rehearing was denied June 4, 1912.