MAAS and others, Executors, Appellants, and others, Respondents, vs. HESSE and others, Appellants, and others, Respondents.

*November 19—December 14, 1920.*

*Bills and notes: Agreement to assume mortgage: Extension of time of payment: Consideration: Trust companies: Deposit of securities: State treasurer as holder for value: Mortgages: Assignment not of record: Effect.*

1. Where a mortgagor conveyed the mortgaged lands to W., but the deed was not signed by his wife, and later the wife, having nothing but an inchoate right of dower, quitclaimed the lands to C., who gave a warranty deed to H. subject to the mortgage, which H. assumed and agreed to pay, and H. and the mortgagee thereupon executed an agreement extending the mortgage, both the agreement to assume and the agreement to extend were without consideration and void.

2. Under sec. 2024—77*j*, Stats., requiring trust companies to deposit securities with the state treasurer, the latter, as respects equities of third parties, is a holder for value in good faith of a mortgage deposited with him in the regular course of

his official business in exchange for other securities of equal value.

3. Where the state treasurer accepted, as security in a trust company's deposit of securities, a duly recorded first mortgage, its priority in his hands as a first recorded lien was not lost because, subsequent to the date of the first mortgage, the trust company had accepted a third mortgage (which purported to be a first mortgage) on the same property and sold the notes thereby secured to its clients without revealing the fact of its prior mortgage; the noteholders having taken no steps to have the third mortgage declared prior to the first mortgage or to prevent its transfer, and not procuring or recording assignments of the third mortgage. *Butler v. Bank of Mazeppa,* 94 Wis. 351, distinguished.

4. The state treasurer is not chargeable with secret equities which may exist against the trust company, although the mortgage note was past due at the date of deposit of the securities.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Modified and affirmed.*

Suit to foreclose four successive mortgages upon the same piece of property located in the city of Milwaukee. The trial court adjudged that the first mortgage, now held by the state treasurer under the provisions of sec. 2024—77j, Stats., was the first lien to the extent of its principal sum. The appeal is by parties having interests under the second and third mortgages and who claim priority over the first mortgage. The only question presented is that of the priority of appellants' interests in the third mortgage over the state treasurer's interest in the first mortgage. The statement of facts may be restricted to those which bear upon this issue.

In 1893 Robert Harper, then owner of the premises, executed the first note and mortgage for $10,000 to an insurance company for which the firm of Nath. Pereles & Sons acted as agent. The note was payable in five years. The mortgage contained a covenant to pay the principal sum with interest, and to pay the taxes. The mortgage was placed on record.

Title to the premises was conveyed to *William W. Harper* in 1899 subject to the mortgage, which he agreed to pay. Thereafter, in 1899, *William W. Harper* and wife executed the second notes and mortgage to the *Citizens' Savings & Trust Company,* a trust company bank then doing business in Milwaukee, and the mortgage was placed on record. Some of these notes are now held by parties other than the trust company.

Said *William W. Harper* executed the third notes, and he and his wife executed the third mortgage, in 1900, for $20,000 to the said trust company, and the mortgage was placed on record. This mortgage purported to be a first mortgage on the land, although the trust company had knowledge of the prior ones. The trust company sold many of the notes to the appellants herein, toward whom it acted in a fiduciary capacity and as to whom it was guilty of fraud and gross negligence in failing to reveal, or in concealing, the insecurity of the investment and various defaults in the payment of interest and taxes.

In 1904 *William W. Harper* conveyed the premises to the W. W. Harper Company subject to mortgage debts, and the conveyance was recorded in 1905. Said *Harper's* wife did not join in the conveyance. In 1909 the said wife, having apparently nothing but her inchoate right of dower, quitclaimed all her right, title, and interest in the premises to the Clark Realty Company and the deed was recorded. On January 5, 1910, the Clark Realty Company executed and delivered to the *Hamilton Realty Company* a warranty deed of the premises subject to the first mortgage, which the *Hamilton Realty Company* expressly agreed to pay. The deed was recorded. In 1913 the W. W. Harper Company quitclaimed the premises to the *Hamilton Realty Company* and the deed was recorded.

In 1905 the first note and mortgage had been assigned to the trust company for value and the assignment was recorded. On or about January 5, 1910, the trust company

and the *Hamilton Realty Company* executed a written extension agreement purporting to extend the time of payment of the first mortgage for five years from November 22, 1909, and the *Hamilton Realty Company* agreed to pay the sum and fulfil the agreements in said mortgage. On November 12, 1910, the trust company deposited the first note and mortgage and its assignments and the extension agreement with the state treasurer under sec. 2024—77j, Stats., who has since held them. In consideration of the deposit of these papers the state treasurer surrendered to the trust company other securities of equal par value which had previously been deposited. The state treasurer had at that time no actual notice of the equitable rights of the subsequent mortgagees.

Nothing was placed on record showing the deposit of the securities with the state treasurer. Neither was anything placed on record showing the assignment to appellants of notes secured by the third mortgage.

The W. W. Harper Company, Clark Realty Company, and *Hamilton Realty Company* were owned and managed by stockholders, officers, and employees of the trust company or of the firm of Nath. Pereles & Sons, which was in turn controlled by the majority stockholders and managing officers of the trust company. The W. W. Harper Company was not engaged in any active business, but held the title to the premises merely for the accommodation of the trust company and permitted the latter to receive the rents.

None of the mortgages have been paid. The original makers and subsequent owners of the premises failed to pay the interest on any of the notes secured by said mortgages, and defaulted every year after 1902 in the payment of all taxes and assessments, and permitted the premises to be sold for taxes in the year 1904 and every year thereafter. The trust company bought the premises at each of these sales and holds the certificates.

On October 2, 1913, the banking commissioner took pos-

session of the trust company as a delinquent banking corporation and is engaged in liquidating its affairs. It is insolvent.

The trial court found the facts substantially as above stated. He concluded that by reason of the fraud and gross negligence of the trust company the third mortgagees were entitled to priority over any interest of the trust company or any one standing merely in its shoes in the several mortgages; that the conveyance of the premises by the Clark Realty Company to the *Hamilton Realty Company* of January 5, 1910, was sufficient consideration for the assumption by the latter of the mortgage indebtedness and of the extension of the time of payment to 1914; that the indebtedness was not due in 1910 at the time of the deposit with the state treasurer; that the deposit was made in consideration of the exchange of other securities previously held by him in the trust capacity imposed by the statute; and that the state treasurer thus became a holder for value in good faith and before maturity of the first note, mortgage, and extension agreement, without notice of conflicting equities, and that they are impressed with a trust constituting a first lien upon the premises superior to the lien or equities relied on by appellants.

Judgment was entered accordingly.

For the appellants there was a brief by *Roehr & Steinmetz,* attorneys, and *Julius E. Roehr* and *Geo. Lines,* of counsel, all of Milwaukee; and the cause was argued orally by *Mr. Lines.*

On behalf of the respondents *State Treasurer* and the *Commissioner of Banking* there was a brief by *Fawsett & Smart,* and oral argument by *Charles E. Monroe,* all of Milwaukee.

JONES, J. We have here one of those unfortunate but far too frequent cases where corporations and their officers

have won and betrayed the confidence of many trusting people some of whom have to be shipwrecked.

The holders of notes under the third mortgage were cheated by less intricate methods than are usually adopted by those planning to defraud. So far as appears, they accepted these notes secured by a third mortgage on the mere representation of the trust company that they were secured by a first lien, when the slightest examination would have shown that there was a first mortgage for $10,000 duly executed and recorded in 1893, which mortgage was assigned to the trust company in 1905 and the assignment promptly recorded.

In the present situation one of two classes must suffer loss: either the note holders secured by the mortgage third in point of time and record, or the *cestuis que trustent* of the company, who had the right to rely for security on the mortgage for $10,000 deposited with the state treasurer pursuant to sec. 2024—77*j*, Stats.

It is unnecessary to state the history of the various dummy corporations which the *Citizens' Trust Company* and its officers used to accomplish their purposes, nor the details of the various conveyances which were made after the first mortgage, since the findings of the trial court and the facts conceded by counsel have greatly narrowed the issues. The only question left for us to decide is whether the note holders are to take priority over the persons claiming to be secured by the mortgage first executed and recorded. In other words, whether, on account of the fraud of the trust company in dealing with the note holders secured by the third mortgage, that mortgage under the registry act has become a lien prior to the original mortgage.

As appears from the statement of facts, the trial judge found that by reason of an extension of the time of payment the note secured by the first mortgage was not past due when the securities were deposited with the state treas-

urer. With this conclusion we cannot agree. We hold that
the document purporting to give the extension had no effect.
It was executed by a corporation which had no shadow of
title except a deed by a wife who had only an inchoate
right of dower. The deed was given while her husband was
living and he was still living at the time of the trial. Under
these circumstances the agreement of extension, as well as
the agreement to assume the first mortgage, was without
consideration and void. Even if the agreement to extend
had been valid, it is a grave question whether it could have
so revived a past-due note and mortgage as to give it the
qualities of paper not due within the meaning of the negotia-
ble instruments act. Counsel for both parties agree that
this act has nothing to do with the case and to this we also
agree. We also concur in the view held by both counsel that
the case is to be governed by the registry law as applied to
the undisputed facts.

It is argued by appellants' counsel that the state treasurer
cannot be held to be a purchaser in good faith and for value;
that the deposit with him was not a transfer; that he acquired
no rights by the deposit except the right to possess and dis-
pose of the securities; that he took no title to the note and
mortgage, but held them without title or beneficial interest
as a mere custodian, and that there was no consideration for
the deposit.

Sec. 2024—77j, after designating the kinds of securities
to be deposited by trust companies, continues: ". . . which
cash, bonds, mortgages, or notes and mortgages, or public
stocks or bonds shall be approved by the commissioner of
banking and shall be held by the state treasurer in trust as
security for the faithful execution of any trust which may
be lawfully imposed upon and accepted by it; . . ."

In *State ex rel. Sheldon v. Dahl,* 150 Wis. 73, 135 N. W.
474, this court construed the statute and held, among other
things, that it is the official duty of the state treasurer "to
hold the securities or cash so deposited in trust, the bene-

ficiaries of which trust are the depositors, creditors, and *cestuis que trusteni* of the trust company," and that in case of a trust corporation sought to be dissolved by voluntary proceedings under sec. 1789, the treasurer's duty to retain the deposited securities is absolute up to the moment when, under the provisions of that section, the dissolution is complete, and after that time the treasurer remains in possession of the securities still charged with the duties of a trustee but relieved from the absolute mandate to retain possession.

Whether the legal title to the $10,000 note and mortgage was in the treasurer or not, he held them for the beneficiaries named in the statute, and as trustee; he had received them in the regular course of his official business in exchange for other securities of equal value. As said by the trial judge:

"In legal effect, that transaction constituted the performance of an obligation imposed by statute upon the trust company. That deposit was not made as a gift, but, in addition to being in discharge of a statutory obligation, it was expressly in consideration of the exchange of securities of equal value which the state treasurer, acting in the trust capacity created by statute, then surrendered to the trust company. As such trustee, the state treasurer was a holder, for value, in good faith. . . ."

However, it is claimed by appellants' counsel that, if this were conceded, still the lien of the note holders under the third mortgage had become and remained prior to the lien of the original mortgage, since, as it is claimed, the treasurer could acquire no better lien than the trust company. For this claim the case of *Butler v. Bank of Mazeppa,* 94 Wis. 351, 68 N. W. 998, is confidently relied on as authority. This case is also relied on by respondents' counsel, and indeed both counsel largely rely upon and cite the same Wisconsin cases relating to the recording acts, although they come to directly opposite conclusions.

In the *Butler Case* one Larson had given two mortgages on the same land. Both were executed on the same day.

Although by reason of established facts the Butler mortgage was in equity, as between him and Fowler, the first mortgage, nevertheless the Fowler mortgage was recorded about an hour before the other. After this Fowler assigned his mortgage to the Bank of Mazeppa, which took without notice of the real facts, and it was held that under the recording act, since Butler's mortgage was first in fact and recorded before the assignment to the bank, its priority was preserved.

In the case before us the first mortgage was executed in 1893, and so far as the record showed had remained the first mortgage up to November 12, 1910, when it was transferred to the state treasurer, who received it in good faith and for value for the benefit of the *cestuis que trustent*. The third mortgage was executed in 1900. No assignment of it or any interest in it appeared upon the record. There is no claim that the treasurer had any actual notice of any agreement that this mortgage should become a prior lien, or of any fraud which might give it priority.

Although it is a subject not discussed in the *Butler Case,* it is significant that the two mortgages were executed on the same day and that the difference in the time of record was only one hour.

In the *Butler Case* the owner of a mortgage which in equity was a second lien was seeking to subordinate the first mortgage by an assignment recorded subsequently to the recording of both mortgages. In the present case the persons having an unrecorded interest in a mortgage third both in point of time and record are seeking to subordinate the original mortgage to the one in which they have an interest. Their claim of the right to thus displace the lien of the first mortgage is based upon fraud proved by latent facts unknown to the transferee in good faith of the first mortgage. They are not relying upon a recorded assignment to themselves, but upon the record of a mortgage to the trust company long subsequent to the record of the first mortgage.

Appellants' counsel argue that the treasurer is not protected by any assignment of the mortgage or any record of the assignment. The statute regulating the deposit of securities makes no provision for such assignments or recording.

If the note holders had made timely discovery of the fraud upon them they could have brought an action against the trust company to have the third mortgage declared a lien prior to the first and could have prevented its transfer. They made no attempt, either by such a proceeding or by procuring and recording assignments, to give any notice to others that they had a claim to priority resting upon secret facts.

Appellants' counsel rely strongly on the fact that, since the note was past due, the mortgage was a mere chose in action, and the proposition that the state treasurer could take no better right than that of the assignor. It does not follow that the treasurer, whom we hold to be a purchaser in good faith, is chargeable with all secret equities which might exist against the mortgagor of the third mortgage or the trust company. In 19 Ruling Case Law, p. 355, § 126, we find the following statement which seems to be supported by the cases cited to the several propositions laid down:

"While the interest of an assignee of a mortgage, where the obligation secured is not negotiable, is generally subject to all defenses existing at the time of the assignment in favor of the mortgagor or his grantee against the assignor, the great weight of authority is to the effect that such interest is not affected with equities against the assignor in favor of third persons of which the assignee had no notice, for though it is the duty of the latter to inquire of the mortgagor, he is not required to inquire of the whole world as to latent equities. Accordingly, a *bona fide* purchaser for value of a mortgage given without any consideration holds it as a valid incumbrance as against creditors of the mortgagor, since his equities are at least equal to theirs, and in such case the legal title prevails. Furthermore, a *bona fide* purchaser of a mortgage, executed apparently on the

same date between the same parties and upon the same property as was another mortgage, is not held to notice of latent equities in favor of the other mortgage by reason solely of the fact that the other mortgage was recorded after the purchased mortgage, but before the transfer."

The facts in this case and the *Butler Case* are so widely different that we cannot give to the latter case the controlling effect claimed for it by appellants' counsel. We must hold that under the facts before us the lien of the mortgage first executed and first recorded has not been displaced and that it remains, in the hands of the state treasurer, the first lien. We are of the opinion that this ruling is in accord with other decisions of this court. *Allison v. Manzke,* 118 Wis. 11, 94 N. W. 659; *Fallass v. Pierce,* 30 Wis. 443; *McDonald v. Sullivan,* 135 Wis. 361, 116 N. W. 10.

It follows that the judgment must be affirmed except in one particular. We have said that the agreement of the *Hamilton Realty Company* to assume the first mortgage was without consideration and void. The judgment must therefore be modified by striking out the part which provides for a deficiency judgment against that company.

*By the Court.*—Judgment modified as indicated in this opinion, and as so modified affirmed.