(No. 5367.   April 1, 1930.)

HARVEY W. HURLEBAUS, Respondent and Cross-Appellant, v. AMERICAN FALLS RESERVOIR DISTRICT, an Irrigation District Organized and Existing Under and by Virtue of the Laws of the State of Idaho, and R. E. SHEPHERD, H. K. WILEY, A. F. McCLOUD, A. A. DAVIS, W. H. SPENCE, J. H. BARKER and F. E. SAYRE, Directors of Said Irrigation District, Appellants and Cross-Respondents.

[286 Pac. 598.]

Bothwell & Chapman, for Appellants and Cross-respondents.

Walters, Parry & Thoman, for Respondent and Cross-Appellant.

McNAUGHTON, J.—This is an action by Harvey W. Hurlebaus against the American Falls Reservoir District and its directors to restrain the district and its directors from procuring official bonds for others than its own officers, and for restraining them from paying out moneys of the district to protect moneys in the hands of county treasurers, belonging to the district and received by the county treasurers under the laws of the state, also to restrain the district and its board of directors from paying out any moneys of the district for the purpose of paying premiums on bonds of the state treasurer for the protection of funds

collected by the county treasurers upon the district's assessments which, by the laws of the state, the state treasurer is required to receive from the county treasurers of the several counties in which lands of the district are located, and disburse it in the payment of interest and principal upon the irrigation district's bonds and obligations to the United States.

The questions presented here are purely questions of law. The complaint upon which the action is founded alleges the due organization of the district; that the district has issued and sold its bonds in the amount of $2,584,000, for construction purposes; and alleges that by resolution of the district board of directors, with the consent of the boards of county commissioners of the several counties in which the district lies, the district has provided for the collection of its assessments by the county officers with other taxes. The complaint states that such assessments have heretofore been collected and are being collected with other taxes by the tax collectors of the counties in which the lands assessed by the district are located; that said collection is being made under the authority of chap. 178, Sess. Laws 1923.

The complaint also states that all certificates required of the district under the statute have been filed with the county auditors of the different counties. The said certificates show that for the current year the amount to be collected on account of said bond issue is $172,362, and for operation and maintenance the sum of $16,000. The complaint also states that the county officials of the respective counties in which the lands of the district lie have heretofore paid to the treasurer of the state of Idaho, in accordance with chap. 178, Sess. Laws 1923, the sums collected by them for said district on account of principal and interest on its bonds, and that the state treasurer now has in his hands, unexpended funds so collected and paid unto him as such treasurer, approximately $200,000.

The allegations of the complaint are full and ample, and present the facts of the whole case. The defense relies entirely upon its demurrer. The district court in passing

upon the issues of law held that the funds of the district, while in the hands of the county treasurers, were and are fully protected by the official bonds of such county treasurers, and the acts of the board of directors in authorizing expenditure of money for the procurement of additional bonds for the protection of its funds while in their hands would be an idle act and the incurring of an unnecessary and unlawful expense. But on the other phase of the case the district court held that providing additional bonds for the state treasurer was an expense properly incurred by the directors of the district for the welfare of the district. In short, the ruling of the district judge was that the funds of the district coming into the hands of the county treasurers, pursuant to chap. 178, Sess. Laws 1923, were protected by the official bonds of the various county treasurers, but that the money so collected and transmitted to the state treasurer, was not protected by the official bond of the state treasurer. Judgment was entered accordingly, upholding the expenditure for additional bonds for the state treasurer, but restraining the expenditure for additional bonds for the county officials. Both parties appealed.

The issues of law presented upon this appeal, under the assignments of error set forth by the appellant and cross-appellant, require an examination of the law in the determination of two questions: (1) Do the official bonds of the state treasurer protect funds coming into his hands on account of irrigation district assessments made pursuant to chap. 178, Sess. Laws 1923? (2) Do the official bonds of the respective county treasurers, in which part of the lands of the district lie, protect funds coming into the hands of the different county treasurers on account of district assessments collected by them under chap. 178, Sess. Laws 1923?

We will first examine the law with reference to the official bonds of the state treasurer. If the duty of the state treasurer, imposed by chap. 178, Sess. Laws 1923, is such an official duty that his acts are covered by the state treasurer's official bond the expenditure of the district's

money for protection would be an idle act, unauthorized and unlawful. On the other hand, if his duties in receiving, depositing and disbursing these moneys in paying the district's bond and United States contract obligations and interest thereon, are not covered by the state treasurer's bond then it would be the duty of the directors of the district, and lawful, to safeguard the funds by procuring bonds as contemplated by the resolution of the board of directors in question.

The duties of the state treasurer are fixed by the Constitution and legislative acts pursuant thereto. Article 4, sec. 11 of the Idaho Constitution provides:

"The executive department shall consist of a Governor .... State Treasurer ...., each of whom shall hold his office for two years, beginning on the first Monday in January next after his election. .... They shall perform such duties as are prescribed by this constitution and as may be prescribed by law."

C. S., sec. 157, provides:

"It is the duty of the treasurer: 1. To receive and keep all moneys belonging to the state not required to be received and kept by some other person. .... 12. To discharge such other duties as may be imposed upon him by law."

C. S., sec. 177, provides:

"The state treasurer must execute an official bond in the sum of $250,000."

Now, turning to the conditions of the bond. C. S., sec. 424, provides:

"The condition of an official bond must be that the principal will well, truly and faithfully perform all official duties then required of him by law, and also all such additional duties as may be imposed on him by any law of the state. Such bond must be signed by the principal and at least two sureties, to the full penalty of the bond. No person shall be accepted as surety on such bond unless he shall, during the year immediately preceding, have been assessed for and paid taxes, in his own right, upon property to the amount for which he has become surety."

C. S., sec. 430, provides:

"Every such bond is in force and obligatory upon the principal and sureties therein for the faithful discharge of all duties which may be required of such officer by any law enacted subsequently to the execution of such bond, and such condition must be expressed therein."

C. S., sec. 433, provides:

"Whenever an official bond does not contain the substantial matter or conditions required by law, or there are any defects in the approval or filing thereof, it is not void so as to discharge such officer and his sureties; but they are equitably bound to the state, or a party interested, and the state or such party may, by action in any court of competent jurisdiction, suggest the effect in the bond, approval or filing, and recover the proper and equitable demand or damages from such officer and the persons who intended to become, and were, included as sureties in such bond."

Now concerning the official duties of the state treasurer with regard to moneys coming into his hands from irrigation district assessments, chap. 178, Sess. Laws 1923, provides that the boards of directors of irrigation districts may provide for the collection of district assessments by the county officials instead of the district treasurer by adopting a resolution providing for such collection, provided that the county commissioners of said county or counties, by unanimous vote agree to such resolution. Thereafter the directors shall furnish the county auditor in which county any part of the district lands are located, a certified copy of any apportionment of benefits which has been made, and notice of any district bond issue or district contract with the United States, stating clearly the amount thereof, the rate of interest and conditions of payment, and each year thereafter shall furnish such auditor or auditors a certified copy of any additional apportionment, including any annual apportionment for operation and maintenance purposes, and a certified copy of the levy or assessment made for operation and maintenance purposes.

In regard to levies made for maintenance and operation expenses, the law provides the county auditor shall each year enter upon the county assessment-roll, against the property therein described, the levy so made for maintenance and operation in a manner similar to that in which other municipal funds or other district assessments are entered, except that the sum assessed and charged against such description of land for such irrigation district purpose shall be entered by the auditor as the operation and maintenance assessment. Such district operation and maintenance tax shall be collected and accounted for by the county officials in the same manner as other municipal taxes and paid to the district treasurer.

In regard to the other levies, the law provides that after receipt of notice of bond issues or contracts with the United States, it shall be the duty of the county auditor to furnish the board of county commissioners, at or before its meeting on the second Monday in September, a statement showing the amount of the annual payment on said bonds or contract and the amount of interest which will fall due during the next year, and it shall be the duty of the county commissioners to levy an assessment on the lands of the district necessary to meet the annual payment on said bonds or contract and the interest as they become due, and the county auditor shall each year enter upon the county assessment-roll the levy so made in manner similar to that in which school or other district or road assessments are entered, except the item shall be entered as the bond or contract assessment, and this act further provides:

" . . . . Such district bond or contract tax shall be collected and accounted for by the county officers in the same manner as other municipal taxes and the collection thereof shall be enforced in the same manner, and neglect to pay the same shall be subject to the same penalties as the other taxes of the county and the same shall be paid over to the state treasurer who shall act as treasurer of the district for the purpose of receiving and depositing such funds and disbursing the same in payment of the district's

bond and United States contract obligations and the interest thereon.''

■ It is clear from the foregoing provision of chap. 178, Laws of 1923, that after adoption of the resolution by the district's board of directors, and consent thereto is entered by the county commissioners of the counties of the irrigation district, providing for the collection of district assessments by the county officials, the state assumes complete control, leaving the district officials no control over the assessments made and levied on account of interest, principal and safety fund for the district bonds or contracts with the United States. The duties of the county officials, with reference to such collections coming into their hands, are arbitrarily and definitely fixed by this law. The collections made on account of assessments for operation and maintenance are to be paid to the irrigation district treasurer, and the collections made on account of assessments for interest or principal of bonds or contracts with the United States must be paid over to the state treasurer. The district officials have power and authority over the money collected for operation and maintenance purposes. Such moneys are paid over to its treasurer; but they have no power or authority over the collections made on account of bond issues or contracts with the United States.

Neither the district nor district officials, under the provisions of this act, have any power over collections made on account of bond obligations or contracts with the United States; the entire right of possession, custody and control over amounts collected from these assessments by provision of this act passes completely to the state treasurer, and it is expressly made his official duty to receive and dispose of such funds by disbursing the same in payment of the district's bond and United States contract obligations and the interest thereon.

■ The clause providing: ''The state treasurer shall act as treasurer of the district for the purpose of receiving and depositing such funds and disbursing the same *in pay-*

*ment of the district's bond and United States contract obligations''* (Italics ours), does not make his acts in that regard any less his official duties. He is given an added duty to perform but no new office is created. He performs duties on behalf of the district which in the absence of action by the board of directors and the county commissioners, under chap. 178, Laws of 1923, would be part of the duties of the irrigation district treasurer. By virtue of this act of the legislature, in the capacity of state treasurer, he becomes the custodian of two funds. As custodian of district funds he is acting as the treasurer of the district for certain purposes and as the district treasurer would act if the assessments were collected by the district officials instead of the county officials. In determining his duties as to these funds he is guided by the law governing irrigation district treasurers, but he is acting nevertheless in the capacity of state treasurer and performing the official duties of that office in manner provided for irrigation district treasurers. His acts are the acts of the state treasurer but for the purposes of the irrigation district.

In this state the law governing defaults in official duties is fixed by statutory enactments, but in the absence of statute the rule is well settled that where an added duty of an official nature is lawfully imposed upon an official, and no additional bond is provided, the conditions of the official bond, given thereafter, cover the added duties. (Murfree on Official Bonds, sec. 81, p. 58; Throop on Public Officers, sec. 236, p. 253; *Aetna Casualty & Surety Co. v. Young*, 107 Okl. 151, 231 Pac. 261; *Van Valkenbergh v. Mayor*, 47 N. J. L. 146; *Town of Redwood City v. Grimmenstein*, 68 Cal. 512, 9 Pac. 560; *City of Oakland v. Snow*, 145 Cal. 419, 78 Pac. 1060; *State v. Matthews*, 57 Miss. 1.)

It is pointed out in the briefs in this case that irrigation districts are only *quasi*-public corporations and that neither the state nor the general public has any interest in these funds. Whether the public is directly interested is not decisive. The Wisconsin court, in an action on a state treasurer's bond for loss occasioned by the state treasurer

permitting an unlawful withdrawal of securities, in *State v. Dahl,* 150 Wis. 73, 135 N. W. 474, 476, said:

"Section 179e, Stats., as amended by chapter 504, Laws of 1905, requires every trust company to deposit with the state treasurer not less than 50 per centum of its capital stock, nor more than $100,000 in cash, bonds, or first mortgage securities on real estate, which 'shall be held by the state treasurer in trust as security for the depositors and creditors of said corporation, and for the faithful execution of any trust which may be lawfully imposed upon and accepted by it.' . . . . The duty to safely keep the securities in question is a duty whose faithful discharge is guaranteed by the bond just as fully as any other official duty. True it is a duty in which neither the state nor the general public has any direct interest; it is to be performed for the benefit of a class, and probably a very limited class, of people; but it is none the less an official duty."

(This case was again before the supreme court of Wisconsin, 165 Wis. 272, 162 N. W. 186, but on other issues.)

█ We are convinced that the duties enjoined upon the state treasurer by chap. 178, Laws of 1923, are official acts as contemplated by our statutes relative to official bonds which, in the absence of legislative act requiring a special bond, are guaranteed by the state treasurer's official bond.

█ The duties of county treasurers in this state are fixed by C. S., sec. 3562, as follows:

"The county treasurer must: 1. Receive all moneys belonging to the county, and all other moneys by law directed to be paid to him, safely keep the same, and apply and pay them out, rendering account thereof as required by law. . . . . "

From the foregoing section it seems clear that the money coming into the county treasurer's hands pursuant to chap. 178, Laws of 1923, are protected by his official bond.

In a case where a question somewhat analogous was before this court, the foregoing section was considered in determining liability on a depository's bond, conditioned to save

and keep the county and the treasurer thereof harmless for all moneys deposited in the bank by the county treasurer. It was held this condition covered moneys coming into the hands of the county treasurer lawfully, whose duty it was, pursuant to the foregoing section, to receive and safely keep the same whether the money belonged to the county or not. (*Washington County v. Weiser Nat. Bank*, 43 Ida. 600, 255 Pac. 310.) To the same effect is *Myers v. Board of Commrs.*, 60 Kan. 189, 56 Pac. 11.

It follows that the trial court was right in holding the official bond of the county treasurer protected district funds coming into his hands from collection of district assessments, and in overruling the demurrer to that part of the complaint seeking to restrain the board of directors from procuring additional bonds for county treasurers, but that the trial court was wrong in holding the state treasurer's bond did not protect district funds coming into his hands from collection of district assessments by the county officials, and erred in sustaining the demurrer to that part of the complaint seeking to restrain the board of directors from procuring additional bonds for the state treasurer, and erred in entering judgment denying that relief.

It is therefore ordered that said demurrer be overruled and the judgment herein dismissing that part of plaintiff's complaint seeking to restrain the action of the board of directors of the American Falls Reservoir District in providing and procuring additional bond of the state treasurer of Idaho be reversed, with directions to enter a decree granting the relief prayed in the complaint in that behalf, and that part of the judgment entered restraining the irrigation district from procuring additional bonds for the county treasurers be affirmed.

Costs to respondent Hurlebaus.

Givens, C. J., and Budge, Lee and Varian, JJ., concur.