[No. 8162.   In Bank. — November 25, 1885.]

JOSEPHINE M. SPENCER ET AL., RESPONDENTS, *v.* SHERMAN O. HOUGHTON, APPELLANT.

GUARDIAN AND WARD — BOND — SUBSTITUTION OF — LIABILITY OF SURETIES. — Under certain sections of the Probate Act, made applicable to guardians by the act of March 27, 1857, the Probate Court has power to accept a new bond from a guardian to take the place of a former bond; and after a new bond has been so given, the sureties on the former are not liable for the defaults of the guardian subsequently occurring

ID. — CITATION — SERVICE BY PUBLICATION. — In a proceeding in the Probate Court to compel an accounting by a guardian who has left the state, so that personal service on him cannot be had, the citation must be served by publication in the same manner as a summons in a civil action. In the absence of such service, neither the guardian nor his sureties are bound by the decree rendered upon the accounting.

ID. — RELEASE OF SURETIES. — Prior to the adoption of section 1543 of the Civil Code, a release of one co-surety released the others, and as to a contract of co-suretyship entered into before the section was adopted, a release of one after its adoption releases the others.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*John Reynolds*, for Appellant.

*Taylor & Haight*, for Respondents.

THORNTON, J.—This is an action against a surety on the bond of the guardian of plaintiff.

The facts are correctly stated in an opinion of Justice Myrick herein filed April 28, 1885, and we adopt that statement, which is as follows:—

While the plaintiff, Josephine M. Spencer, was a minor (then Josephine M. Richardson), W. Harney was the guardian of her person and estate. In 1870 he was discharged as such guardian, and H. M. Hastings was appointed in his stead; and after qualifying, Hastings received from Harney ten thousand dollars and upwards, property of the ward. Hastings's bond was in the sum of twenty-eight thousand dollars, with E. B. Mastick and A. A. Cohen as sureties (jointly and severally with Hastings) in the sum of fourteen thousand dollars, and with H. P. Livermore and H. H. Haight as sureties (jointly and severally with Hastings) in the sum of fourteen thousand dollars. On the 14th of September, 1871, Livermore filed a petition in the Probate Court to be discharged from liability for future acts of his principal, and such proceedings were had, that (on waiver by Hastings of service of citation) the court made an order that said Hastings give other security in place of Livermore, as prayed for in said petition. On the 21st of September, 1871, and in pursuance of such order, said Hastings and the defendant herein, S. O. Houghton, executed a bond to said Ward, by which, after reciting the facts of the execution of the former bonds, the petition of Livermore, and the order for other security, they bound themselves, Hastings as principal and Houghton as surety, in the place and stead of Livermore, jointly and severally in the sum of fourteen thousand dollars, portion of the sum of twenty-eight thousand dollars, the condition of the bond being that if said Hastings, as guardian, faithfully executed the duties of his trust, according to law, the bond should be void, else to remain in full force and effect. On the tenth day of January, 1872, the said H. H. Haight filed a petition praying to be released from all responsibility on account of future acts of said Hastings, and such proceedings were had (Hastings having waived service of citation), that on the same day the court made an order that said Hastings file

another bond, in the sum of twenty-four thousand dollars, it then appearing that the personal estate of the ward did not exceed twelve thousand dollars. Hastings accordingly, on the 19th of February, 1872, filed a bond in the sum of twenty-four thousand dollars, with sureties as follows: S. A. Hastings and B. S. Brooks, jointly and severally, in the sum of six thousand dollars, portion of said sum of twenty-four thousand dollars; John Currey and T. I. Bergin, jointly and severally, in the sum of six thousand dollars, portion as aforesaid; S. W. Holladay and H. K. W. Clarke, jointly and severally, in the sum of six thousand dollars, portion as aforesaid; and Earl Bartlett and J. H. Smyth, jointly and severally, in the sum of six thousand dollars, also portion as aforesaid. Upon the approval of this bond, an order was made by the Probate Court that said Mastick, Cohen, and Haight, sureties on the former bond, be released from all responsibility for the future acts of the guardian. The name of the defendant, Houghton, was not included in this order. On the 18th of October, 1877, after the said Josephine had attained majority, she executed to Haight, Mastick, and Livermore an instrument acknowledging the receipt from them of fifteen hundred dollars, and releasing them from all liability on the bond executed by them. On the 10th of September, 1877, she executed a like release to A. A. Cohen, acknowledging the receipt of five hundred dollars.

The said Hastings departed from this state in the fall of 1872, and never returned. The said Josephine attained majority February 11, 1874. The said Hastings, having failed to file an account, the said court, on the 25th of March, 1878, on petition of the said Josephine, made an order that said Hastings file an account within thirty days after service on him of such order. No citation was issued, but a copy of the order was served upon Hastings on the 10th of April, 1878, at the city of Washington. Hastings did not file an account, and has never

complied with the requirement of said order. After thirty days from the said service, the said Josephine, by her attorney, prepared an account from the records and papers on file in the Probate Court in said case, and filed the same, and petitioned the court that the same be allowed as and for the account of said Hastings. The said court thereupon fixed a day for the settlement of the account, and directed notice thereof to be given by posting. On the day fixed, the court appointed a referee to examine and revise the account, and after examination and the hearing of the evidence of witnesses produced by the said Josephine, the referee reported that there was a balance of $6,012 in favor of said Josephine due from said Hastings, and the court thereupon made an order settling the account as and for the final account of said Hastings, guardian, at the said sum of $6,012.

Before the commencement of this action, plaintiff forwarded to Hastings a certified copy of the order settling the account, and demanded of him payment of the said sum due, but he refused and neglected to pay the same or any part thereof. After the said Josephine attained majority she executed releases to several of the sureties for the consideration of five hundred dollars each; viz., September 10, 1877, to A. A. Cohen, and October 18, 1877, to H. H. Haight, E. B. Mastick, and H. P. Livermore. It appears from the report of the referee that other sureties paid to Josephine the sum of five hundred dollars each; viz., T. I. Bergin, S. W. Holladay, Earl Bartlett, H. K. W. Clarke, B. S. Brooks, and S. A. Hastings.

The bond of the 19th day of February, 1872, was filed on that day by order of the Probate Court. The amount of the bond was fixed at twenty-four thousand dollars by the court in its order. This sum was double the amount of the ward's estate; and no doubt this was intended as a new bond to take the place of the former bonds. That the court had power to take a new bond and discharge

the sureties on the bonds previously approved and filed, we have no doubt. The statute then in force gave such authority. (See sections 78, 79, 80, 81, etc., of the Probate Act, made applicable to guardians by the act of the 27th of March, 1857, Stats. 1857, p. 120.) This bond was, in our opinion, a new bond, given as a substitute for the other bonds, and the legal effect of it was that Houghton was not responsible for any defaults of the guardian occurring subsequently to the date of its filing on the nineteenth day of February, 1872. In other words, the taking a new bond in double the amount of the estate, which was the largest amount for which the court could require security, was substituting this last bond for the other bonds, and released Houghton from all defaults subsequently occurring. (*Lane* v. *State*, 27 Ind. 108; *United States* v. *Wardwell*, 5 Mason, 82.)

Whether the default of the guardian herein occurred prior or subsequently to the 19th of February, 1872, does not appear distinctly either from the evidence or finding. But the presumption must be indulged to sustain the judgment of the court that it occurred prior to the day in February, 1872, above mentioned.

We are further of opinion that the decree or order of the Probate Court made in 1878, adjudging the amount due by the guardian, did not bind the sureties. Hastings, the guardian, never had notice of this proceeding, and therefore the sureties were not bound. The service of the order of the court made on Hastings in Washington city was no service. Such service could only be made by citation (Code Civ. Proc., secs. 1707, 1708, 1709); and here it appears that no citation was issued, but an order was made by the court and directed to be served. It is said that Hastings had left the state at the time that it became essential to notify him, and that therefore the citation could not be served on him; and further, that it is provided in section 1710, Code of Civil Procedure, that "when personal notice is required, and

no mode of giving it is prescribed in this title, it must be given by citation"; and as there could be no personal service, the person to be cited having left the state, citation was not required. We are of opinion that service could be made in a mode provided by law. By section 1709, Code of Civil Procedure, it is declared that "the citation must be served in the same manner as the summons in a civil action." A summons in a civil action can be served on a person who has departed from the state, by publication (sections 412, 413), and by section 1709, above quoted, a citation can be served in the same way. The mode of procedure under this statute for serving summons by publication, where a person has departed from the state or resides out of the state, etc., is applicable to the service of a citation by publication.

As to what is enacted in Code of Civil Procedure, sec. 1710, its meaning is that where *actual service* is directed to be made on the party *personally,* and not by publication, it must be made by citation. This is not inconsistent with service of a citation by publication in a case where the party to be served has departed from the state or resides out of it. The two sections, 1709 and 1710, may thus be readily reconciled. It certainly could not have been the intention of the legislature to say in one section that a citation can be served by publication, and in the next that a citation could only be served by actual personal service.

From what has been said just above, our conclusion is that the account of Hastings, guardian, as settled by the Probate Court, having been made without such notice as the law required to the guardian, was not binding on Houghton, and was not admissible in evidence against him.

Nor do we concur in the view contended for by counsel for plaintiff, that the service by publication of the citation would be a nullity. To sustain this view, counsel cites *Pennoyer* v. *Neff*, 95 U. S. 714, and *Hart* v.

*Sansom,* 110 U. S. 151. The features of the case before us are entirely different from those presented by these cases. Those features are that Hastings, a citizen of the state, is appointed and qualifies under its statutes as guardian of the person and estate of a minor, and by virtue of this qualification and appointment gets into his hands the property of the minor. He binds himself by this appointment to make a true inventory of all the estate, real and personal, of his ward that shall come to his possession or knowledge, and to return the same within such time as the judge of the court appointing him shall order; to dispose of and manage all such estate according to law and for the best interest of his ward, and faithfully to discharge his trust in relation thereto; to render an account on oath of the property, estate, and moneys of the ward in his hands, and all proceeds or interests derived therefrom, and of the management and disposition of the same, within three months after his appointment, and at such other times as the court shall direct or whenever it shall require; and at the expiration of his trust to settle his account with the probate judge or with the ward, if he be of full age, or his legal representatives, and to pay over and deliver all the estate, moneys, and effects remaining in his hands or due from him on such settlement to the person or persons who may be lawfully entitled thereto. (Hittell's Gen. Laws, secs. 8, 35, pp. 488, 491.) The guardian thus appointed is bound to settle his accounts whenever directed by the Probate Court. The notice to settle issued by the court must, of course, be in accordance with that prescribed by statute. The guardian receives his appointment, under these provisions of law, and as the law prescribes a service of such notice by a publication of the citation as of a summons in an ordinary civil action, we are of opinion that the contention cannot be held sound that the substituted service by publication of the citation to a guardian so appointed who has left the state

without settling his accounts, is not such notice as is legal and binding on him. A person appointed guardian under our statutes may be regarded as having consented in advance that upon leaving the state service of notice may be made upon him by publication. (See Probate Act, Hit. Dig., secs. 288, 289, p. 852.) This is in consonance with the rule laid down in *Vallee* v. *Dumergue*, 4 Exch. 200, in these words:—

"It is not contrary to natural justice that a man who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he may not have actual notice of them." Such a rule is approved in *Pennoyer* v. *Neff*. (See 95 U. S. 735.)

By the bond executed by Houghton in September, 1871, he became a co-surety with Haight, and so continued to be until the taking of the new bond with eight sureties on the nineteenth day of February, 1872, when Haight was discharged by order of court from all future defaults of the guardian. We say that Haight and Houghton were co-sureties, for the reason that they were responsible for the same amount of the ward's estate, and that Houghton became surety in place of Livermore, who was Haight's co-surety. Houghton in effect took Livermore's place as surety, and as Livermore was co-surety with Haight, Houghton, who took his place, became also co-surety with Haight. It appears that Haight was released, for a sum of money paid by him in 1877, by the ward, plaintiff here, who had then attained her majority. Did not this release Houghton? It is said it did not, because at that time the Civil Code was in force, and that section 1543 of that code provided that "a release of one of two or more joint debtors does not extenguish the obligations of any of the others, unless they are mere guarantors, nor does it affect their right of contribution from him." Conceding that section 1543, Civil Code,

would apply to sureties who became such after the code went into effect, we are of opinion that it does not apply to the bond herein, which was executed before that time, if when the bond executed by Houghton was entered into it was the law that the release of one surety jointly bound with another released that other. This rule, if it was then law, entered into Houghton's contract of suretyship, and became a vested right, of which he could not be deprived by subsequent legislation.

The rule above stated was held to be law in this state in *People* v. *Buster*, 11 Cal. 220, which was decided in 1858. In that case the court said: "A surety has a right to stand on the precise terms of his contract. He can be held to no other or different contract. In this case, the sureties all contracted together, and with reference to the common responsibility. In case of a breach or loss, each surety had his recourse for contribution on his fellows. The discharge of any one of the obligors affected the contract as to all. It made it indeed a different contract from that made by the parties."

If the discharge or release of one surety made it a different contract from that made by the parties, certainly such discharge or release of a surety would release a co-surety.

This rule, declared in 1858 in *People* v. *Buster*, has never been changed in any way, unless by section 1543, Civil Code, which, for the reason above given, has no application here.

It follows from the foregoing that the release of Haight by the plaintiff in 1877 released Houghton from any responsibility on his bond. (See Murfree on Official Bonds, sec. 721.)

We are referred by the counsel for respondent to a series of cases (which may be found cited in section 383 of Brandt on Suretyship and Guaranty), which tend to establish the rule that a release of one surety only releases his co-sureties to the extent that such released

co-surety would otherwise have been liable to contribute to his co-sureties. We have carefully examined those cases, and they certainly lay down the rule as just stated above. But we think that the rule applicable here has been settled in this state by *People* v. *Buster, supra,* and we do not feel authorized to overrule it and establish a new one.

We will add here that if Houghton remained responsible for the defaults of Hastings after the execution of the new bond by the eight sureties, he was a joint surety with them, and as some of these eight sureties were released by the plaintiff after she had reached her majority, by the operation of the rule laid down in *People* v. *Buster, supra,* Houghton was released.

The judgment and order denying a new trial must be reversed, and the cause remanded for a new trial.

Ordered accordingly.

Morrison, C. J., McKee, J., Myrick, J., and Ross, J., concurred.