(February 17, 1927.)

## WASHINGTON COUNTY, STATE OF IDAHO, a Municipal Corporation, Appellant, v. THE WEISER NATIONAL BANK, a Corporation, et al., Respondents.

[255 Pac. 310.]

Depositories—Public Depository Bond—Withdrawal of Surety—Effect on Liability of Remaining Sureties—Bond Covering All County Funds Held by Depository—Scope.

1. Under Laws 1921, chap. 256, secs. 20, 21, relative to surety on public depository bond withdrawing therefrom, considered in connection with bond providing for withdrawal of sureties therefrom by giving 90 · days' notice, the bond will be deemed canceled only in so far as surety is concerned who has complied with provisions of law in regard to termination of suretyship, and such notice of cancelation will not terminate liability of other sureties as fixed by C. S., sec. 446.

2. Under Laws 1921, chap. 256, sec. 14, withdrawal from public depository bond of one or more sureties in accordance with sections 20 and 21 did not relieve the remaining sureties from their several liability thereunder on failure of treasurer to withdraw funds from depository as provided by section 32.

3. Depository bond covering all county funds held by depository protects all moneys coming into hands of treasurer and deposited with bank which it was his duty to receive under C. S., sec. 3562, except as to funds deposited in public administrator's account, and notwithstanding that certain of moneys were paid to treasurer by reason of taxes levied by units other than county, since such moneys so received by county treasurer automatically go into funds in treasury of county for which treasurer is required to account.

APPEAL from the District Court of the Seventh Judicial District, for Washington County. Hon. T. Bailey Lee, Presiding Judge.

Publisher's Note.

See Depositories, 18 C. J., sec. 60, p. 587, n. 93 New; sec. 63, p. 589, n. 35, p. 590, n. 51 New.

Principal and Surety, 32 Cyc., p. 177, n. 74, p. 184, n. 33.

Action to recover on a depository bond signed by defendants as principal and sureties. Judgment for defendants. *Reversed.*

Frank D. Ryan and Oppenheim & Lampert, for Appellant.

The public depository act was designed to protect the funds of all political subdivisions and municipalities in the state of Idaho having taxing powers. (Sec. 2, chap. 256, Sess. Laws 1921.)

Funds in the hands of the county treasurer are county funds within the meaning of the depository act. (*Spartley v. Board,* 56 Kan. 272, 43 Pac. 232; *Thatcher v. County Commrs.,* 13 Kan. 182; *Myers v. Board,* 60 Kan. 189, 56 Pac. 11; *Commissioners v. Craft,* 6 Kan. 145; *Marquette Co. v. Treasurer of Ishpeming,* 49 Mich. 244, 13 N. W. 609; *Marquette County v. Ward,* 50 Mich. 174, 15 N. W. 70; *Fidelity Deposit Co. of Maryland v. Wilkinson County,* 109 Miss. 879, 69 So. 865.)

Funds deposited by a tax collector in a county depository are protected by the depository bond, being county funds. (Secs. 6 and 24, chap. 256, Sess. Laws 1921; C. S., secs. 3245, 3325; *Bennett v. Bank of Commerce,* 220 Fed. 950.)

The withdrawal or release of a surety from a depository bond does not affect the bonds as to the remaining sureties or alter their liabilities. (*City of Pocatello v. Fargo,* 41 Ida. 432, 242 Pac. 297; *Board of Com. of Hennepin Co. v. State Bank,* 64 Minn. 180, 66 N. W. 143; *Maryland Casualty Co. v. Pacific County,* 245 Fed. 831; *State v. United States F. & G. Co.,* 81 Kan. 660, 106 Pac. 1040, 26 L. R. A., N. S., 865; C. S., sec. 446; *Board of Com. of St. Louis Co. v. Security Bank of Duluth,* 75 Minn. 174, 77 N. W. 815; 21 R. C. L. 1051.)

"The modern rule is in accord with the doctrine of the equity courts that the release of a surety discharges his

cosureties from liability only to the extent of the pro-
portion of which the discharged surety could have been
held to contribute to them." (Notes, Ann. Cas. 1917B,
p. 1184, and cases cited; L. R. A. 1918E, 97; Stearns on
Suretyship, 3d ed., 170, 171.)

James Harris, George Donart and Morgan & Smith, for
Respondents.

The liability of sureties on a depository bond cannot
be extended by doubtful construction or application. (*City
of Pocatello v. Fargo* (on rehearing), 41 Ida. 454, 242 Pac.
297.)

A depository bond, such as the one involved in this
case, written pursuant to Idaho Sess. Laws 1921, chap. 256,
p. 562, sec. 17, protects only money belonging to the
county and not funds held by the county treasurer by
virtue of his office, which makes him treasurer of common
school districts. (*State v. Crook County Bank of Prine-
ville*, 104 Or. 495, 208 Pac. 749; Sess. Laws 1921, chap.
256, secs. 4, 5, 6, 7, 8, 11, 13, 17; p. 566, sec. 24; p. 442, sec.
35, and p. 457, sec. 55; C. S., sec. 3585.)

Funds of a school district, or other municipality of which
the county treasurer is treasurer by virtue of his office, are
not county funds (*Drainage Dist. No. 2 of Ada County
v. Ada County*, 38 Ida. 778, 226 Pac. 290.)

A depository bond, such as that sued upon in this action,
does not protect funds in the hands of the tax collector.
(Idaho Sess. Laws 1921, chap. 256, p. 562, sec. 17; C. S.,
sec. 3325.)

"While an act must be construed as of the date of its
passage, subsequent legislation may be considered in deter-
mining the intent of the prior enactment." (*Empire Vot-
ing Machine Co. v. City of Chicago*, 267 Fed. 162; *State v.
Clausen*, 63 Wash. 535, 116 Pac. 7; 2 Sutherland on Statu-
tory Construction, 2d ed., par. 476; *Cape Girardeau County
Court v. Hill*, 118 U. S. 68, 6 Sup. Ct. 951, 30 L. ed. 73;

*Drainage Dist. No. 2 v. Ada County,* 38 Ida. 778, 226 Pac. 290.)

A depository bond is not an official bond. (*State v. American Bank & Trust Co.,* 75 Mont. 369, 243 Pac. 1093; *Colquitt v. Simpson & Ledbetter,* 72 Ga. 501; *Henry County v. Salmon,* 201 Mo. 136, 100 S. W. 20; *Barrett v. Stoddard County,* 246 Mo. 501, 152 S. W. 43; *Compton v. Marengo County Bank,* 203 Ala. 129, 82 So. 159.)

The release of one surety from a depository bond releases all sureties and cancels the bond. (*Cochise County v. Ritter,* 3 Ariz. 208, 73 Pac. 448; *People v. Buster,* 11 Cal. 215; Sess. Laws 1921, chap. 256, p. 564, sec. 20, and p. 568, sec. 32; *United States v. Clamp,* 292 Fed. 317; *Spencer v. Houghton,* 68 Cal. 82, 8 Pac. 679; *Stone-Ordean-Wells Co. v. Taylor,* 139 Minn. 432, 166 N. W. 1069; *Wilkinson v. Conley,* 133 Ga. 518, 66 S. E. 372; *Jones v. Whitehead,* 4 Ga. 397; *Walsh v. Miller,* 51 Ohio, 462, 38 N. E. 381.)

BUDGE, J.—This action was instituted by appellant to recover from respondent the sum of $137,866.32, together with interest, upon a depository bond executed by respondent Weiser National Bank as principal and some fifty-nine individuals as sureties. The maximum amount for which each of the sureties became obligated was less than the amount of the bond.

The bond recited, in so far as material herein, that the Weiser National Bank had made application to be designated as a depository and to receive on deposit a part of the funds in the treasury of Washington County and agreed to pay interest on the same, and that if the bank should at the beginning of each and every month render to the treasurer and the auditor of Washington County a statement showing the daily balance of the moneys of said county held by it during the month next preceding and the interest thereon, and should well and truly keep the sums of money deposited and interest thereon subject at all times to the check and order of the treasurer and pay over the same and any part thereof upon the check or written de-

mand of the treasurer and his successor in office, as demanded, and should in all respects save and keep the county and treasurer thereof harmless and indemnified for and by reason of making said deposit or deposits, then the obligation to be void and of no effect, otherwise to be and to remain in full force and virtue; provided, that if the said "surety" should so elect "they" might cancel the bond at any time by giving 90 days' notice thereof in writing to the principal, the supervising board of Washington County, its treasurer and auditor and the county auditor, accompanied by a sworn statement setting forth all the facts connected with and the reasons for such cancelation, and that the bond should be deemed canceled at the expiration of said 90 days but should remain in full force and effect until the expiration of said period.

In pursuance of the designation of respondent bank as depository and approval of the bond by the board of county commissioners of appellant county, the county treasurer made deposits in the bank of funds which had come into his hands as treasurer, *ex-officio* tax collector and *ex-officio* public administrator. Thereafter, on June 21, 1924, the bank suspended business, at which time various sums were standing on its records to the credit of the county treasurer in different accounts and representing moneys which he had received and deposited as belonging to Washington County and other taxing units within the county, and as public administrator, as follows: Treasurer of Washington County Account; Treasurer of Washington County Savings Account; Tax Collector's Account; County Treasurer's Special Account; Public Administrator's Account.

Upon the trial of the action it was contended by respondents that the evidence introduced by appellant did not disclose what, if any, portion of the money deposited under the Treasurer of Washington County Account belonged to Washington County and was deposited under the terms and conditions of the bond, and that the evidence conclusively showed that. deposits to three other accounts in the name

of the county treasurer, viz., Treasurer of Washington County Special Account, Tax Collector's Account, and Public Administrator's Account, were moneys not protected by the terms and conditions of the bond, and a motion was made to withdraw from the consideration of the jury all of the testimony offered and exhibits introduced by appellant tending to establish all of the accounts, with the exception of the county treasurer's savings account, on the ground that there was no evidence to go to the jury tending to establish any liability against any of the sureties on the items objected to. The court sustained this motion. Evidence was then introduced by respondents to show that two of the sureties had served written notice of withdrawal from the bond, whereupon respondents made a motion for a directed verdict upon the ground that the evidence taken as a whole was insufficient to justify the granting of any relief to appellant, and more particularly that by reason of the serving of written notice of withdrawal by two of the sureties the bond was canceled, under the provisions of Sess. Laws 1921, c. 256, sec. 20, p. 564. The court sustained this motion, and the jury was accordingly directed to return a verdict for respondents, and upon the verdict so returned judgment was duly entered.

It is contended that the court erred in directing a verdict for respondents and in granting their motion to withdraw from the consideration of the jury evidence introduced by appellant tending to establish deposits made by the county treasurer and carried on the bank's records as Treasurer of Washington County Account, County Treasurer's Special Account, Tax Collector's Account, and Public Administrator's Account.

In determining the rights and liabilities of the parties herein consideration must be given to what is known as the public depository law, Sess. Laws 1921, c. 256, p. 557 et seq., providing, among other things, for the safeguarding and protection of funds of political subdivisions and of municipal and *quasi*-municipal corporations of the state; regulat-

ing the deposit of public moneys by counties and municipal corporations of every kind and class; prescribing the qualifications and obligations of banks qualifying as public depositories, etc. This act defines "depositing units" as any county, municipal corporation of any kind or class . . . . or other *quasi*-municipal districts now or hereafter created or organized and authorized by law to levy taxes or special assessments; and "treasurer" as the official custodian of the funds of a depositing unit. A form of depository bond is provided for, which form was followed substantially in the execution of the bond herein, furnishing at least some evidence of the intention of the parties to be bound by the terms and conditions of the public depository law, the interpretation of which and its application to the transaction in question, together with the terms and conditions of the bond, must determine the rights of the parties. If respondents are right in their position that the withdrawal of at least one surety from the depository bond rendered the bond void, the trial court was correct in directing a verdict for respondents, and there would be no necessity for discussing other questions raised.

Section 20 of the public depository law, *supra*, upon which respondents mainly rely, and the application of which it is insisted relieves them from liability under the bond by reason of the written notice of withdrawal by at least one of the sureties, provides:

"Sec. 20. Cancelation of Bond by Surety. If the surety on any public depository's bond shall so elect, he may cancel said bond at any time by giving 90 days' notice of the cancelation thereof, in writing, to the said depository, the treasurer, auditor and supervising board of the depositing unit and the county auditor. The said bond shall be deemed canceled at the expiration of the said 90 days but shall remain in full force and effect until the expiration of said period. . . . ."

Section 21 provides a form of notice of cancelation, as follows:

"Sec. 21. Statutory Form of Notice of Cancelation. The notice of cancelation provided for in the foregoing section shall be substantially in the following form:

"To ——, a public depository, the supervising board of the depositing unit, its treasurer, auditor and the county auditor of —— county:

"Take notice, That on the —— day of ——, 19—, the undersigned became surety on the bond of the above named —— as a public depository of the funds of the (naming the depositing unit), under the provisions of the public depository law of Idaho in the penalty of $——.

"That, by the terms of said public depository law, it is provided that said surety shall have the right to terminate his suretyship under said bond, by giving notice of its (his) election so to do to the assured depository, the supervising board of the depositing unit, its treasurer, auditor and the county auditor of —— county, and thereupon the said surety shall be discharged from any and all liability thereunder for any default of the said depository accruing after the expiration of 90 days after the service of such notice.

"That the undersigned as surety aforesaid, desiring to take advantage of the terms of said law above referred to, does hereby elect to terminate his liability in accordance with such provisions, and the object of this notice is to so inform you, and each of you.

"Therefore, be it known, that from and after the expiration of said 90 days from the receipt of this notice, the undersigned will not consider himself liable upon the aforesaid bond."

These two sections are to be construed *in pari materia,* and when so construed the question is whether the withdrawal of one or more sureties in compliance with their terms cancels the bond in its entirety and relieves from liability thereunder all other sureties who have not withdrawn in the manner specified. That it relieves the surety

or sureties so withdrawing from all liability, we think must be conceded.

From a reading of sections 20 and 21, *supra,* it will be observed that the language used in reference to their application is in the singular throughout. Section 20 provides: "If the *surety* . . . . shall so elect, *he* may cancel said bond by giving 90 days' notice," etc. Upon the giving of such notice the bond is canceled as to the *surety* who gives the same. The section does not provide that where only one and not all sureties gives such notice the bond becomes void as to all other sureties. Nor does the bond so provide. Section 21 provides, *inter alia:* "That, by the terms of the said public depository law, it is provided that said *surety* shall have the right to terminate *his* suretyship, under said bond, by giving notice of its (his) election so to do . . . . and thereupon the said *surety* shall be discharged from any and all liability thereunder. . . . . That the undersigned as surety aforesaid, . . . . does hereby elect to terminate *his* liability," and "the undersigned will not consider *himself* liable upon the aforesaid bond."

[1] In the form of depository bond set forth in section 17 of the public depository law the following clause is contained:

"*Provided,* That if the said surety shall so elect, ——— may cancel this bond at any time by giving 90 days' notice of the cancelation thereof, in writing, to the said principal, the supervising board of the (depositing unit), its treasurer and auditor and the county auditor, accompanied by a sworn statement setting forth all the facts connected with, and the reasons for such cancelation. Said bond shall be deemed canceled at the expiration of the said 90 days but shall remain in full force and effect until the expiration of said period:"

The bond as executed contains the proviso, "That if the said surety shall so elect, *they* may cancel this bond at any time by giving 90 days' notice," with language following to conform to the provisions of the section above referred

to. . And while it is true that the statute and the bond provide that after the giving of written notice by a surety "said bond shall be deemed canceled at the expiration of the said 90 days," we think a fair and reasonable interpretation of the statute in connection with the wording and meaning of the bond justifies the conclusion that the bond shall be deemed canceled only in so far as the surety is concerned who has complied with the provisions of the law in regard to termination of suretyship under the bond.

Section 14 of the depository law provides, *inter alia:* "Where the penalty of the bond exceeds $10,000, each surety may become severally liable for any sum less than the whole amount that he may specify that he undertakes, and in all such cases if there should be any default of the principal, each surety shall be held for the whole amount that he agrees to undertake. . . . ."

[2] The failure of the treasurer to withdraw the funds from the bank as provided by section 32 of the act did not relieve the remaining bondsmen from their liability, since the bond is the several obligation of each surety, and the withdrawal from the bond of one or more sureties did not relieve those not withdrawing from their several liability thereunder.

No statute of another state containing provisions similar to the public depository law under consideration has been called to our attention, and we have been unable to find a like enactment. Authorities cited in support of and against the position we have taken are not, therefore, of any particular value. The conclusion reached depends upon the construction placed upon the law itself in connection with the bond.

It is urged by respondents that in the original opinion in the case of *City of Pocatello v. Fargo,* 41 Ida. 432, 242 Pac. 297, this court held that a public depository is a *quasi*-public official and its bond an official bond, but that in the opinion on rehearing in that case a contrary holding was announced. It was distinctly stated in the opinion on re-

hearing that the original opinion was correct in so far as it affected the liability of bondsmen for moneys held by the depository on general deposit, but that their liability did not extend under the bond to another form of deposit, namely, a time deposit, the question being whether the obligation of the bond applied to a portion of the city fund in the bank on time deposit. There was no modification by a majority of the court of that portion of the original opinion holding that a public depository is a *quasi*-public official and its bond an official bond, and we feel bound by the rule announced in the original opinion, although there are authorities to the contrary. In the absence of a modification of such holding or its being overruled, the liability of sureties on the bond involved herein who had not withdrawn is fixed under the provisions of C. S., sec. 446, and the withdrawal of one or more sureties would not render the bond void.

The next point urged by appellant is that the court erred in sustaining respondents' motion to withdraw from the consideration of the jury evidence tending to establish the various accounts set forth in the complaint and hereinbefore referred to. This motion was made upon the theory that the evidence of appellant did not disclose what, if any, portion of the money claimed to have been deposited in the Treasurer of Washington County Account belonged to Washington County and was deposited under the terms and conditions of the bond, and that as to the three other accounts, viz., County Treasurer's Special Account, Tax Collector's Account, and Public Administrator's Account, the evidence conclusively showed that they were moneys held by the county treasurer, tax collector or public administrator, the deposit of which was not protected by the terms and conditions of the bond. It might be here observed that since the bond is not void, for the reasons hereinbefore mentioned, the moneys deposited and carried by the bank and known as the Treasurer of Washington County Savings Account were moneys belonging to Washington County and covered by

the bond, that account representing moneys received by the county from the sale of county bonds. Reference was not made to this particular account in respondents' motion to withdraw from the consideration of the jury evidence introduced by appellant tending to establish the various accounts, and it must therefore be conceded that the deposits under such account were protected by the bond. As to the other accounts, the facts remain, as established by the record, that all of the moneys deposited by the treasurer were moneys collected as county taxes and turned over to the treasurer as such, or moneys collected for other taxing units of the county and not apportioned or disbursed at the time of the failure of the bank, or moneys coming into the hands of the county treasurer in his capacity as *ex-officio* public administrator.

The public depository law was enacted for the express purpose of safeguarding and protecting the funds of political subdivisions and of municipal and *quasi*-municipal corporations of the state having power to levy taxes or assessments. It was such funds that respondent bank applied to have deposited, and to obtain which it was necessary for it to furnish a bond. It was the intention of the bank and the bondsmen by the execution of the bond to furnish security for moneys officially coming into the hands of the treasurer of appellant county and deposited with the bank. It is the duty of the county treasurer, as provided by C. S., sec. 3562, to receive all moneys belonging to the county, and all other moneys by law directed to be paid to him, and safely keep the same, including moneys coming into his hands as public administrator.

[3] From a reading of the bond given by respondent bank it will be noted that it covers all funds of Washington County held by the bank. The bond reads, in part, as follows:

"Now, therefore, if said The Weiser National Bank, . . . . shall at the beginning of each and every month render to the treasurer and the auditor of said Washington County

a statement in duplicate, showing the daily balance of the moneys of said Washington County held by it during the month next preceding . . . . and shall well and truly keep all said sums of money so deposited, or to be deposited, as aforesaid, . . . . and shall in all respects, save and keep the said Washington County and the treasurer thereof, harmless and indemnified for and by reason of the making of said deposit, or deposits, then this obligation shall be void and of no effect, otherwise to be and to remain in full force and virtue."

The bond was to save and keep Washington County and the treasurer thereof harmless for all of the moneys deposited in the bank by the county treasurer. The depository understood and undoubtedly the bondsmen possessed like knowledge that moneys received by the treasurer and deposited in the bank were made up of moneys lawfully coming into the hands of the treasurer, whose duty it was to receive and safely keep the same. We do not think the depository or the bondsmen can be heard to say, after the bank had received the money on deposit, that since some of the moneys were paid to the county treasurer by reason of taxes levied by taxing units other than the county and would ultimately be distributed and find their way back to the units for which they were collected, they were funds the deposit of which was not protected by the terms and conditions of the bond. Such moneys so received by the county treasurer automatically go into the county treasury, and when such funds so received by the county treasurer herein were by him deposited in the bank, they were protected by the bond given, being "funds in the treasury of Washington County." The treasurer was required to account for such moneys, not exclusively those belonging to Washington County, but those belonging to any taxing unit which might ultimately be entitled to receive a part of the same, and to any person authorized by law to receive from him whatever moneys he officially held in custody. The bond provides that it will save and keep Washington County and the treasurer thereof

harmless and indemnified for and by reason of the making of said deposit or deposits. (*Marquette County v. Ward,* 50 Mich. 174, 15 N. W. 70; *Walker v. State,* 176 Ind. 40, 95 N. E. 353, 358; *Commissioners of Mower County v. Smith,* 22 Minn. 97, 109; *Meyer v. Widber,* 126 Cal. 252, 58 Pac. 532.)

In our opinion the supreme court of Kansas announced a proper rule of construction when, dealing with a similar question in *Myers v. Board of Commrs.,* 60 Kan. 189, 56 Pac. 11, 12, it said:

"The contention of the sureties is that, the bond being conditioned for the prompt payment by the bank of county funds only, there is such a departure from the statute that the obligation is void; that the words 'county funds' in the bond, mean such moneys, as properly belong to the county, in contradistinction to the funds of the state, township, school districts, etc.; and that a surety, being favored in law, cannot be held beyond the exact terms of his contract. We do not think the position taken by the plaintiffs in error is well founded. The words 'public money,' used in said section of the statute, and the expression 'county funds,' employed in the bond, seem to us to be convertible terms. The funds of a county are the moneys and securities in the possession of the county treasurer. In the statute relating to the quarterly examination of the funds in the hands of the county treasurer, the words 'funds of the county,' are used to mean all of the moneys in the treasury. 1 Gen. St. 1897, c. 27, §§ 113, 114. This court, in the case of *Brown v. Board,* 58 Kan. 672, 50 Pac. 888, says: 'The Argentine Bank of Argentine was a depository of the funds of Wyandotte County, made such under the provisions of paragraphs 1716 of the General Statutes of 1889.' The money deposited by the treasurer in the Bank of Greensburg was all credited on the books of the bank to him as such officer. He was the instrument for the collection of public funds. There could be no private ownership of money in the county treasury until it is actually disbursed.

Condemnation money and redemption money have been held to be public funds, within the meaning of the statute governing deposits, although the county is not the owner of such money. *Spratley v. Board,* 56 Kan. 272, 43 Pac. 232. The county treasurer of Kiowa county kept separate accounts with the various townships, school districts, and other municipalities, and these accounts are referred to as so many different funds; and the amounts due to these different municipalities were apportioned on the county treasurer's books in January, March, June, and November, but this constituted a mere computation. The money in the treasurer's hands was not actually divided. These funds in the treasurer's hands, the proceeds of other than county taxes, must, in our judgment, be regarded as belonging to the county until they are actually paid over to the state, municipality, or persons for whom they were collected. The county is responsible for their safe-keeping, and, if it is not the absolute owner, it holds as trustee for the benefit of the real owners.''

It was held in *Fidelity & Deposit Co. v. Wilkinson County,* 109 Miss. 879, 69 So. 865, that township funds, the legal title of which is in the county, which holds them for disbursement in accordance with the purpose for which they are created, are county funds, within the meaning of the county depository laws. But whether the moneys might be said to be the property of the county until disbursed, or whether it be said that they were collected for other taxing units and held in trust by the county, in either case the duty rests upon the county to protect and safeguard such funds, and the public depository law and the bond given in the instant case are, in our opinion, broad enough to furnish this protection.

We think the trial court erred in directing a verdict for respondents, in withdrawing from the consideration of the jury the evidence above referred to, and in entering judgment for respondents. The judgment is therefore reversed.

Costs awarded to appellant, but no · costs are awarded against sureties who withdrew as provided by the statute.

Hartson, D. J., concurs.

WM. E. LEE, C. J., and GIVENS, J.—We concur in the foregoing opinion by Mr. Justice Budge, except that portion relating to funds deposited in the Public Administrator's Account.

TAYLOR, J., Dissenting.—Previous to this statute, the withdrawal, release or discharge of one of several sureties upon an undertaking such as this discharged the remaining sureties. Any change in the contract (and a release of one of the parties is such change) releases all of the parties. (32 Cyc. 177, 184; *Cochise County v. Ritter,* 3 Ariz. 208, 73 Pac. 448; *People v. Buster,* 11 Cal. 215; *Spencer v. Houghton,* 68 Cal. 82, 8 Pac. 679.)

The opinion recites as to section 20:

"The section does not provide that where only one and not all sureties gives such notice, the bond becomes void as to all other sureties."

The interpretation placed upon the lack of such provision is contrary to established and well-recognized rules of construction to ascertain the intention of a legislative act. Without quoting at length, I may cite 25 R. C. L., "Statutes," p. 1054, sec. 280:

"It is not to be presumed that the legislature intended to abrogate or modify a rule of the common law by the enactment of a statute upon the same subject; it is rather to be presumed that no change in the common law was intended, unless the language employed clearly indicates such an intention. . . . The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language."

We must therefore look to the act for any clear indication of such intention. I maintain such cannot be found in the act; in fact, it plainly provides to the contrary.

Under section 14, each surety is held for the whole amount that he agrees to undertake, but has a right to compel contribution from his cosureties. It is wholly contrary to the provisions of the act to hold for naught the requirements of sections 20 and 32 thereof. Section 20 is plain in its terms that a surety may "cancel said bond" by giving "90 days' notice of the cancelation thereof," and the "bond shall be deemed canceled at the expiration of the said 90 days."

In order to establish any liability upon the bond, a demand for the money on deposit must have been made. Section 32 of the act requires the county treasurer, "upon receiving the notice of cancelation hereinbefore provided for," to make no further deposits until the depository "is reinstated by the supervising board," and to "withdraw from said depository the entire amount of the funds of the depositing unit on deposit with said depository before the expiration of the period of 90 days." This withdrawal is absolutely necessary, or a demand for the money in order to establish whether, at the time or within 90 days from such "notice of cancelation," there is a liability upon the bond by ascertaining whether the bank can and will pay that money. To accomplish this, the act provides that these funds shall be withdrawn, 25 per cent within 10 days, 25 per cent each 25 days thereafter, "until the whole amount has been withdrawn." In such case, where demand must be made within a fixed time, there is no liability upon a surety unless, in violation of the bond, the bank has failed to pay upon a demand within that time. (*United States F. & G. Co. v. American Bonding Co.,* 31 Okl. 669, 122 Pac. 142.) No notice is given to the other bondsmen of the cancelation by anyone, but they are protected by the statute requiring that the liability, if any, of all the signers be established by demand on the bank within 90 days.

To hold that a demand was not necessary within 90 days violates the rights of the remaining bondsmen in total disregard of the statute that the liability, if any, of a bonds-

man who gives notice of cancelation, and his liability for contribution, as well as that of the remaining ones, must be established within 90 days by a withdrawal of all of the money, or a demand for it.   While the bondsmen canceling were liable only for a specified amount set forth after their signatures, in one instance $5,000 and in the other $2,500, they were so liable unless the bank, upon demand in 90 days, paid not only the first $5,000, or $2,500, but the last penny of the deposit, and to have this ascertained the remaining bondsmen had a right to have the funds withdrawn as the statute provides.

This case cannot be decided upon any theory of permitting one to withdraw, and continuing the bond, in the face of the positive provisions of the statute.   They were entitled to know, when a bondsman gave notice of cancelation, whether there was a liability upon him, and not have him absolutely excused when perhaps a demand would have demonstrated that the bank could not or would not pay during the 90-day period in which such bondsman was liable, and to thus have a right to compel such bondsman to pay his portion of the liability.   It is for this very purpose that this provision was made.   This protection was absolute, and part of the contract with the remaining bondsmen.

In my opinion, the theory of the first opinion in *City of Pocatello v. Fargo,* cited, did not require any holding that the bond of a depository was an official bond, but if it did, the statement that the opinion on rehearing so declared, or adhered to that holding, is wholly groundless, for while the original opinion declared the bond an official bond, and that the doctrine of *strictissimi juris* did not apply, the opinion on rehearing expressly applied it, and, in addition, held that the liability between the bank and city was that of debtor and creditor as to the portion for which the bond was held liable, and was not such as to the time deposit, but was that arising under a trust relation.   Surely, if it was a trust relation and an official bond, the bank and bondsmen would have been

liable for the whole amount because of the money having come into the hands of the official (the bank) in a trust relation. The opinion on rehearing cannot be justified by, or squared with, a statement that the bond was an official bond.

I do not think that the depository act contemplated security for funds deposited by the public administrator. These funds were not within the spirit or intent of the act as "funds" of a political subdivision, or "moneys of the depositing unit" (section 24). The county had no interest in this money, assumed no liability, lost nothing if it were lost, and could not be called upon to make it good if it were.

Petition for rehearing denied.