[Civ. No. 15199.   First Dist., Div. One.   Sept. 24, 1952.]

W. E. WILLIAMS, Appellant, v. GLEN E. REED et al., Respondents.

Mancuso, Herron & Wynn for Appellant.

Athearn, Chandler & Hoffman for Respondents.

WOOD (Fred B.), J.—Plaintiff W. E. Williams has appealed from a judgment dismissing as to all the defendants but Reed this action to enforce payment of two promissory notes and to foreclose a chattel mortgage given to secure the notes. The judgment was rendered in response to a motion for summary judgment by defendant Cairns and a motion for dismissal by defendants Arvidson and Carroll. It followed an order which declared that it appeared from the affidavits of the parties that the ''debt sued upon has been satisfied by a judgment (§ 726 CCP), and that there are no triable issues presented by the pleadings.''

The notes in suit bear date June 14, 1950, and were signed as makers by all the defendants (Glen E. Reed, Robert M. Cairns, Kenneth W. Arvidson, and Thomas F. J. Carroll) in favor of plaintiff as payee. Each note bears interest at 5 per cent. One is in the principal sum of $30,000, due in 60 days; the other, in the sum of $10,000 due December 14, 1950.

The defendants failed to pay the $30,000 when it became due. Thereafter and on October 12, 1950, plaintiff entered into an agreement with defendant Reed and his wife concerning these notes and their payment. That agreement referred to the $30,000 and the $10,000 notes and the chattel mortgage given to secure them, and then provided as follows: (1) ''. . . Williams does hereby agree to accept the sum of Thirty Five Thousand Dollars ($35,000.00) plus interest on Thirty Thousand Dollars ($30,000.00) at the rate of five percent (5%) per annum from the 14th day of June, 1950, until paid, in full settlement of both Promissory Notes hereinabove described, said sum to be paid to him in full on or before the 28th day of October, 1950.''

(2) Williams further agrees: ''. . . to withhold any action to enforce the collection of said note and/or the foreclosure of said Chattel Mortgage to and including the 28th day of October, 1950.''

"*3.* Upon receipt of said payment in full, W. E. Williams will execute any and all documents required to evidence full satisfaction of said obligation. Glen E. Reed . . . does hereby agree and covenant . . . in full discharge of his obligation to pay to W. E. Williams in full on or before the 28th day of October, 1950, the sum of Thirty Five Thousand Dollars ($35,000.00) plus interest at the rate of five per cent (5%) per annum on Thirty Thousand Dollars ($30,000.00) commencing the 14th day of June, 1950, until paid.''

(4) Reed and wife each for himself or herself agree that if the entire sum of $35,000 plus interest is not paid to Williams on or before October 28, 1950:

"*A.* That W. E. Williams shall have judgment for Thirty Five Thousand Dollars ($35,000.00) plus interest as provided herein against Glen E. Reed, who shall be adjudged liable therefor together with any cost and disbursements incurred by the said W. E. Williams in effecting said Judgment and the collection of same, including reasonable attorneys fees;

"*B.* The said Glen E. Reed . . . does . . . hereby waive any and all legal and/or equitable defenses, of whatever kind or nature, to the claim of the sum of Thirty Five Thousand Dollars ($35,000.00) plus interest as herein provided, including, but not in limitation of the foregoing, any and all defenses, legal and/or equitable to either or both of the said Promissory Notes and/or to the said Chattel Mortgage;

"*C.* That W. E. Williams may obtain said Judgment without service of any papers upon Glen E. Reed and/or Alice Marie Reed and without prior notice to either of them; that in fact by this Agreement the said Glen E. Reed . . . does hereby confess Judgment under the conditions and in the amounts herein contained;

"*D.* That Glen E. Reed and Alice Marie Reed each for himself or herself jointly, do hereby waive now and forever any stay of execution upon such Judgment;

"*E.* That Glen E. Reed and Alice Marie Reed each for himself or herself and jointly do hereby waive any and all rights to set aside said Judgment to move for new trial or to appeal from said Judgment;

"*F.* That Glen E. Reed and Alice Marie Reed does hereby each for himself or herself and jointly declare that W. E. Williams, his agents, employees, servants and assigns may use any and all force reasonably necessary to execute upon any of the personal or real property of said debtors wherever

located at any time of the day or night and the said debtors do hereby waive any and all rights or claims that they might have for wrongful taking or unlawful taking of said real and/or personal property by reason thereof and any and all claims and all defenses that they might assert by reason of the reasonable force used in taking of the real and/or personal property;

"G. That Glen E. Reed and Alice Marie Reed each for himself or herself and for themselves jointly, do hereby agree that W. E. Williams, his agents, employees, servants or assigns may execute said Judgment upon all of the property, not in limitation of the last preceding paragraph, particularly described in that said Chattel Mortgage heretofore made and executed by Glen E. Reed to W. E. Williams as aforesaid."

Mrs. Reed expressly waived any objections to the chattel mortgage theretofore executed by her husband and waived any defenses she might have to the mortgage and agreed that the mortgage be deemed to have been executed by her as well as by her husband.

Defendant Reed covenanted and agreed that the interest of "Williams in and to the personal property described in the said Chattel Mortgage is the paramount lien interest in and to each and every item of property therein described and . . . covenants and agrees to hold the said W. E. Williams, his agents, employees, servants and assigns free and harmless upon any claim successfully made by any person or persons that such person or persons interest on all or any of said personal property is paramount and superior to that of W. E. Williams therein. In the event of any costs, including attorneys fees are incurred by the said W. E. Williams in defending his interests in the said property against the claim of any person or persons, such cost and reasonable attorneys fees shall be paid and it is hereby agreed that they shall be paid by the said Glen E. Reed . . ."

Soon after maturity of the October 12, 1950, obligation, plaintiff brought suit upon it against Reed, and on November 2, 1950, obtained judgment against him for $35,571.24, costs, and attorneys fees. No part of that judgment has been paid. Nor does it appear that plaintiff has taken any steps, by levy of execution or otherwise, to enforce that judgment.

April 3, 1951, the present action was filed against the four makers of the original $30,000 and $10,000 notes.

These are the significant facts concerning which the parties are in agreement.[1]  Do these facts demonstrate that plaintiff is without right to maintain the present action?[2]

Defendants Cairns, Arvidson, and Carroll say this question should be answered in the affirmative.  They claim that (1) the October 12, 1950, agreement between plaintiff and the Reeds was a novation and released the cosigners of the notes, (2) the reduction of the October, 1950, obligation of Reed to judgment was an election which estops plaintiff from proceeding herein, and (3) plaintiff has waived the security of the chattel mortgage to the prejudice of the rights of Reed's cosigners and thereby lost his right to proceed against them.

(1)  *Did the October, 1950, agreement between the plaintiff and the Reeds operate as a novation and thereby release Reed's comakers from their obligation on the original notes?*  "Novation is the substitution of a new obligation for an existing one."  (Civ. Code, § 1530.)  "Novation is made: 1. By the substitution of a new obligation between the same parties, *with intent to extinguish the old obligation;* 2. By the substitution of a new debtor in place of the old one, *with intent to release the latter;* or, 3. By the substitution of a new creditor in place of the old one, *with intent to transfer the rights of the latter to the former.*"  (Civ. Code, § 1531, emphasis added.)  ▮ Novation is a question of fact, and the burden of proving it is upon the party asserting it.  (*Alexander* v. *Angel,* 37 Cal.2d 856, 860-861 [236 P.2d 561], and cases cited.)

---

[1]Reed's cosigners make some claim to having been mere accommodation makers but that presents, at most, a triable issue of fact.  Williams claims, by his affidavit and that of Reed, that the cosignatures were given for a consideration, not merely a lending of their credit to Reed.  (See Civ. Code, § 3110; *Gardiner* v. *Holcomb,* 82 Cal.App. 342, 351-353 [255 P. 523]; *Brown* v. *Volz,* 90. Cal.App.2d 793, 798-799 [204 P.2d 110].)

[2]Upon notice of motion supported by affidavit, for summary judgment against a plaintiff, the complaint may be dismissed unless the plaintiff by affidavit shows such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact.  The affidavit in support of the motion "must contain facts sufficient to entitle . . . defendant to a judgment in the action."  The affidavits in opposition "shall set forth facts showing that . . . a good cause of action exists upon the merits."  (Code Civ. Proc., § 437c; Stats. 1939, ch. 331, p. 1671.)  The inquiry is limited to ascertaining if there is an issue of fact to be tried, not to determine that issue itself.  (*Arnold* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 741 [146 P.2d 684]; *Walsh* v. *Walsh,* 18 Cal.2d 439, 441 [116 P.2d 62]; *Gardenswartz* v. *Equitable etc. Soc.,* 23 Cal.App.2d Supp. 745, 752 [68 P.2d 322].)

If the mere execution of the October 12, 1950, agreement is to meet the requirements of subdivision 1 of section 1531, we must find expressed in the agreement an "intent to extinguish the old obligation." If it is to meet the requirements of subdivision 2, we must find an "intent to release" the old debtors. Where is any such intent manifest in this agreement? We find none.

■ Plaintiff agreed to accept, in settlement of the old notes, a certain sum of money, with interest, that sum to be paid in full by October 28, 1950. That does not indicate an intent to substitute the new obligation for the old, unless and until the new obligation has been performed. Of like import was plaintiff's promise "upon receipt of payment in full" to execute documents evidencing satisfaction of the old obligation. ■ His agreement that he would withhold until October 28, 1950, "any action to enforce the collection of said note" (the old obligation) or "the foreclosure of said chattel mortgage" indicates an intent to keep the old obligation alive, not to extinguish it nor to release Reed or any of his cosigners, nor to release the mortgage security.

■ Of similar import are Reed's agreement that plaintiff's interest in the personal property described in the chattel mortgage is the paramount lien interest in and to every item of that property, and Mrs. Reed's waiver of any objections or defenses she might otherwise have to the chattel mortgage which her husband had executed without her signature. Nor do we derive any different intent from the confession of judgment features of the October, 1950, agreement. Those features merely implement that agreement. Of themselves they do not evince an intent presently to substitute the new obligation for the old, nor to substitute Reed as sole obligor in lieu of Reed and his comakers of the original notes.

Reed's comakers rely heavily upon *Alexander* v. *Angel, supra,* 37 Cal.2d 856, but that case does not support them. It was not a summary judgment case. It had gone to trial upon the merits. The trial court found that Angel purchased a fountain lunch and restaurant from Alexander, giving the latter a mortgage on the business fixtures, and that Angel later sold to Haws. Haws then made an agreement with Alexander whereby Haws undertook to pay a sum of money equal in amount to Angel's obligation, in amounts and at times different from those specified in the old obligation. The trial court further found it was the intention of the

parties to the new agreement to substitute the new agreement and the new debtor for the old agreement and the old debtor, and that such intention was evidenced by the language and actions of the parties subsequent to the execution of the new agreement. The reviewing court found sufficient evidence in the record to support those findings, applying " 'the time honored rule that all substantial conflicts must be resolved in favor of the respondent, and *all legitimate and reasonable inferences indulged in to uphold the findings if possible.*' " (37 Cal.2d at 858.) In the instant case, in contrast, we have for consideration only the writing signed by plaintiff and the Reeds, and from it alone we cannot derive an intent to substitute the new obligation for the old or a new debtor for the original four debtors.[3]

Even if Reed's October, 1950, agreement with plaintiff were in substitution and release of Reed's obligation on the original notes, it would not necessarily follow that plaintiff thereby released Reed's comakers. That, it would appear, was the rule at common law and in California prior to the enactment of section 1543 of the Civil Code. (See *Armstrong* v. *Hayward,* 6 Cal. 183, 186, limiting the former rule to a technical release under seal; *People* v. *Buster,* 11 Cal. 215, a release of one surety released his cosureties as to future acts of the principal; and *Spencer* v. *Houghton,* 68 Cal. 82, 89-91 [8 P. 679].) ■ Section 1543 of the Civil Code provides that "A release of one of two or more joint debtors does not extinguish the obligations of any of the others, unless they are mere guarantors; nor does it affect their right to contribution from him." This section "provides in effect that the joint debtor who accepts a release shall be held to have consented that the liability of his joint debtor should be continued together with his own liability to contribution." (*Northern Ins. Co.* v. *Potter,* 63 Cal. 157, 158.) This section applies to persons jointly and severally obligated as comakers of a promissory note. (*Wristen* v. *Curtiss,* 76 Cal. 6 [18 P. 81].) The same is true in respect to the release of one of the comakers after their obligation has been reduced to judgment. (*Harrier* v. *Bassford,* 145 Cal. 529, 532-533 [78 P. 1038].) It applies to cosureties on the bond of an admin-

[3]In this regard it might be noted that the execution of a new chattel mortgage covering the same property and the same debt as a prior chattel mortgage though providing for different payments, does not extinguish the lien of the prior mortgage in the absence of an express agreement so to do. (*Bowden* v. *Bank of America,* 36 Cal.2d 406 [224 P.2d 713].)

istrator (*Elizalde* v. *Murphy*, 146 Cal. 168, 170-171 [79 P. 866]) and to joint guarantors of a promissory note (*Brown* v. *Pacific Coast Agency*, 53 Cal.App. 788, 791 [200 P. 977]). See, also, *French* v. *McCarthy*, 125 Cal. 508, 512 [58 P. 154], and *Uhl Estate Co.* v. *Commissioner of Internal Revenue*, 116 F.2d 403, 405.

Respondents assert that the fact that the new agreement was executory in nature did not prevent it from operating as a discharge of the original notes, hence that Reed's non-performance of the new agreement did not prevent or avoid such a discharge taking place, nor did it revive the notes. It is true, of course, that a creditor and a debtor may substitute a new executory contract for an old one. But that is not, upon the record before us, what the plaintiff and Reed did in October of 1950. Nonperformance of that agreement could not very well effect a discharge which the signing of that agreement did not effect.

(2) *Was the reduction of Reed's October, 1950, obligation to judgment an election which estops plaintiff from maintaining the present action?* If the October, 1950, agreement was not a novation and did not release Reed's comakers on the original notes, it is difficult to see how the mere reduction of Reed's October obligation to judgment (a judgment not yet satisfied in whole or in part) could give that obligation a different effect. In October Reed promised to pay plaintiff a certain sum of money. In November the court found that Reed for a valuable consideration promised to pay plaintiff that sum of money, and decreed that plaintiff have judgment against Reed for that amount of money. That judgment does not import any new factor into the situation. It affords plaintiff a better muniment of title to Reed's October promise to pay. It does not modify plaintiff's promise to accept that amount of money, and nothing but money (no mere added muniment of title to Reed's promise) in satisfaction of the original notes of June, 1950.

The parties agree that upon the basis of the record before us the obligations of the defendants as comakers of the original notes were joint and several. Each note was in the form of a promise made in the singular number and executed by each of the defendants. In such a case there is a presumption that the promise is joint and several (Civ. Code, § 1660 and subd. (7) of § 3098).

Reed's comakers claim that in such a case the bringing of an action against one of the makers (Reed) without joining

the others, and obtaining judgment against him alone, bars the plaintiff from later suing any of the others in respect to that obligation. They cite cases from other jurisdictions, none from California. Those cases are not applicable. Three of them involved joint, not joint and several, obligations: *Fleming* v. *Ross* (1906), 225 Ill. 149 [80 N.E. 92, 8 Ann. Cas. 314]; *Morgan* v. *Edgar* (1929), 107 W.V. 536 [149 S.E. 606]; and *Fedderson* v. *Goode* (1944), 112 Colo. 38 [145 P. 2d 981]. The remaining case, *Taylor* v. *Sartorious* (1908), 135 Mo.App. 23 [108 S.W. 1089], involved a joint and several obligation. The court recognized that joint and several obligors may be sued separately but held that those later sued get the benefit of a judgment favorable to the obligor first sued, to the extent that he successfully defended. ■ It is true in most jurisdictions, including California, that *joint* obligors upon the same contract are indispensable parties. They may not be sued separately (*Farmers' Exchange Bank* v. *Morse,* 129 Cal. 239, 243 [61 P. 1088]; *Woods* v. *Berry,* 111 Cal.App. 675, 680 [296 P. 332].) ■ If judgment is obtained in a separate action against one, it bars an action against the others. (*Brady* v. *Reynolds,* 13 Cal. 31, 32-33.) ■ When the obligation is *joint and several* it is not non-joinder to sue one alone (*Goff* v. *Ladd,* 161 Cal. 257, 260 [118 P. 792]; *Jones* v. *Wilton,* 10 Cal.2d 493, 496-497 [75 P.2d 593]; *Moreing* v. *Weber,* 3 Cal.App. 14, 22 [84 P. 220]; *Ward* v. *Massachusetts B. & I. Co.,* 57 Cal.App. 623, 628 [208 P. 188]; *Webb* v. *Casassa,* 82 Cal.App. 307, 312 [255 P. 541]). The same is true of an action against one or more and less than all of a number of persons jointly and severally obligated as tort feasors. In such a case the judgment obtained against one is not a bar to an action against the remaining joint and several obligors. ''Nothing short of satisfaction in some form constitutes a bar . . .'' (*Grundel* v. *Union Iron Works,* 127 Cal. 438, 442 [59 P. 826, 78 Am. St.Rep. 75, 47 L.R.A. 467]. See, also, *Heath* v. *Manson,* 147 Cal. 694, 701 [82 P. 331]; *Cole* v. *Roebling Const. Co.,* 156 Cal. 443, 449 [105 P. 255]; *Black* v. *Bringhurst,* 7 Cal. App.2d 711, 714 [46 P.2d 993].) ■ That being so in respect to joint and several tort obligors, the same should be true of joint and several obligors under a contract. That seems to be the general rule. (39 Am.Jur. 908, Parties, § 39, note 1; and 4 Corbin on Contracts, 1951, 774-775, § 937, note 35.) Accordingly, but for the possible effect of section 726 of the Code of Civil Procedure, a mere judgment against

Reed in a separate action against him upon the original notes would not preclude plaintiff from bringing subsequent actions against Reed's comakers.

But plaintiff's former action was not brought upon the original notes. It was brought against Reed upon his separate agreement of October, 1950, to which none of the other note makers was a party.

(3) *Has the plaintiff waived the security of the chattel mortgage to the prejudice of the rights of Reed's cosigners and thereby lost his right to proceed against them?* Reed's cosigners direct attention to section 726 of the Code of Civil Procedure which declares that "[t]here can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter," and prescribes the circumstances under which a deficiency judgment may be obtained and the manner and method of determining the amount of such judgment. They then claim that plaintiff has disabled himself from resorting to the security of the chattel mortgage and has thereby prevented himself from getting a deficiency or personal judgment against them.

This came about, they say, because the October, 1950, agreement with Reed operated as a novation which cancelled the original notes and as a necessary consequence extinguished the chattel mortgage. This argument lacks merit for the reason, as we have seen, no novation occurred by the mere execution of the October, 1950, agreement.

They further contend that "even if no novation had been entered into, and the plaintiff had brought his action . . . against Reed alone on the notes and recovered judgment, the plaintiff would have been only an unsecured judgment creditor, and the lien of the mortgage would have been lost." Whether or not such a suit by plaintiff reduced to judgment would have lost him the mortgage seems immaterial. He did not bring an action on the "notes." He brought an action on the October, 1950, agreement.

Moreover, plaintiff's former action against Reed was upon an agreement susceptible to the interpretation that Reed confessed judgment while waiving as to himself the benefit of prior resort to the mortgage security and yet keeping the mortgage alive and available for the benefit of plaintiff and Reed's cosigners. The prohibition against Reed's making any such waiver at the time of or in connection with

the making of the loan and the execution of the mortgage (Civ. Code, § 2953) signifies authority in Reed later to waive the rights or privileges conferred upon him by section 726 of the Code of Civil Procedure. (See *Salter* v. *Ulrich,* 22 Cal.2d 263, 266-267 [138 P.2d 7, 146 A.L.R. 1344].) If after obtaining judgment against Reed in the former action, plaintiff had levied execution against the mortgaged property, bought that property upon the execution sale, and were now relying upon the title thus acquired (as was done by the secured creditor in the Salter case) plaintiff might find that he had destroyed the mortgage security or had estopped himself from claiming any mortgage interest in that property and thereby be precluded from obtaining a deficiency judgment against Reed's cosigners. But plaintiff has not done that. There is nothing in the record before us to indicate that he has even taken out a writ of execution to enforce the judgment in the former action.

There is some indication that respondents contend that the $10,000 was usurious and wholly or partially void. We will not discuss this contention as it is not an issue before us on the present record.

Lest we be misunderstood in this matter, it should not be inferred that plaintiff should have judgment on the issues framed by the pleadings. We have discussed and decided the issues as framed on the appeal from the judgment entered upon the granting of the motion for summary judgment and the motions to dismiss. We do not intend to foreclose the determination of any issue of fact (including novation upon evidence presented at the trial of this action).

The judgment is reversed and the cause remanded for trial.

Peters, P. J., and Bray, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 20, 1952.