SCHOOL DISTRICT NO. 1 of SILVER BOW COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF MONTANA ET AL., PLAINTIFFS AND APPELLANTS, *v.* MAURICE DRISCOLL, DEFENDANT AND RESPONDENT.

No. 13604.
Submitted June 7, 1977.
Decided Aug. 17, 1977.
568 P.2d 149.

John G. Winston, Craig G. Philips (argued), Butte, for appellants.

Robert J. Holland (argued), Butte, for respondent.

McKittrick & Duffy, Joseph W. Duffy (argued), James M. Driscoll (argued), Helena, amicus curiae.

MR. JUSTICE HARRISON delivered the opinion of the Court.

This is an appeal from a judgment of the district court, Silver Bow County, awarding defendant school supervisor accrued sick and annual leave, and his contractual salary for the months of May and June, 1975.

At the outset we note in view of the failure of appellant School District to set forth the issues of its case as provided by Rule 23, M.R.App.Civ.P., we will discuss this matter on the issues as delineated and set forth by respondent.

Issues I and II ask this Court to determine whether the district court properly interpreted the clauses of the collective bargaining contract concerning wages, hours and working conditions entered into by and between Butte Teamsters Union, Local No. 2 and the School District.

Issue III is directed at the court's finding that respondent was entitled to his contract pay for the months of May and June, 1975.

The trial court found respondent Maurice Driscoll was a party to three contracts with School District No. 1, not two as alleged by the School District. The first contract was a collective bargaining agreement executed by and between the School District and Butte Teamsters Union, Local No. 2 as the sole bargaining representative for all administrative personnel in the school system. The second contract was an individual contract executed on July 1, 1974, between Driscoll and the School District providing for an annual salary of $24,217.40. The third contract was the contract of employment of Driscoll, as a consultant to the assistant director of the Vo-Tech Center, and the Vo-Tech Center. It became effective on February 28, 1975, to run through the months of March, April, May and June, 1975.

"13-725. Where all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several."

"13-726. A promise, made in the singular number, but executed by several persons, is presumed to be joint and several."

These sections correspond directly with their California predecessors and present counterparts, sections 1659 and 1660, Cal.Civ.C.1954.

No Montana cases are clearly on point here. California courts, however, have made numerous distinctions regarding these statutes. In a recent case, *Vincent v. Grayson*, 30 Cal.App.3d 899, 906,

106 Cal.Rptr. 733, 738, the court stated that the language of " 'I/ We hereby promise and agree to pay * * *' " imparts joint and several [liability]. In *Kaneko v. Okuda,* 195 Cal.App.2d 217, 15 Cal.Rptr. 792, the court held that three signers of a contract and option to purchase had benefited from the consideration and hence were liable jointly and severally. In *Williams v. Reed,* 113 Cal. App.2d 195, 248 P.2d 147, the court held comakers of a mortgage liable jointly and severally when each note was in the form of a promise made in the singular and executed by each of the makers. Finally, in *Olson v. Foster,* 42 Cal.App.2d 493, 109 P.2d 388, the court held that a number of trusts were jointly and severally liable for the balance due on legal services made on behalf of and benefiting all of the trusts.

■ ■ In the present case, there is no language expressly defining the liabilities of the two promisors. There is no language comparable to "I/We agree * * *". The debt, however, is named as a total $15,000, and nowhere is it explicitly broken down into two halves of $7,500 each. It is not clear what benefit each of the promisors received from the agreement, but it specifically stated that the $15,000 was to be satisfaction of an earlier "disagreement between all of the parties." What relationship the promisors each had to the earlier disagreement, or to each other, is not apparent from the papers or the court files. A prior debt, however, is sufficient to constitute consideration in a later promise regarding that debt, sections 13-501 and 13-502, R.C.M.1947, and both promisors here received a benefit from the contract. These facts raise the presumption of joint and several liability of each promisor, and as a matter of law, Schwenk is entitled to this presumption. The burden of proof is on S-W Company to rebut this presumption.

■ ■ When a contract is ambiguous, the language of the parties must be considered in light of subject matter and the surrounding circumstances, as well as the positions of the parties at the time the contract was made. *Kintner v. Harr,* 146 Mont. 461, 408 P.2d 487; *McNussen v. Graybeal,* 146 Mont. 173, 405 P.2d 447. The construction that the district court gave to the language

was just one of many constructions which could reasonably be given it. The district court erred in determining that there was no ambiguity in the contract.

■ It follows that the court erred in granting summary judgment for S-W Company. This Court stated in *Fulton v. Clark*, 167 Mont. 399, 404, 538 P.2d 1371, "Summary judgment is usually inappropriate where the intent of the contracting parties is an important consideration." 6 Moore's Federal Practice, Para. 56.17 [41.-1]. In *Fulton* the contract did not specifically provide for the payment of the fees in question. The Court stated:

"* * * To determine if the agreement precludes management fees for long range services, the district court must inquire as to the conduct of the parties and as to the existence and substance of the alleged oral agreement. Whether there was an executed oral agreement, as well as whether the conduct of the parties modified the written agreement, are material questions of fact bearing on the intent of the parties. * * *" 167 Mont. 404, 538 P.2d 1374.

Similarly, here the contract does not state the extent of liability of each promisor. The intent of the parties to the contract is a genuine issue of fact and hence summary judgment is inappropriate.

The following considerations for example, would have been appropriate inquiry for the trial court to arrive at the facts. Which party was the source of the language used in the agreement regarding how payment of the debt was to be made and how and why was this language chosen? What interests, if any, did each of the promisors to the agreement, namely S-W Company and John Wight or his predecessor in interest, have in the prior dispute upon which the agreement was based? What were the income-producing capacities of each of the two parcels of land in which the promisors owned interests at the time of the agreement, and was this information within the knowledge of all parties at the time? What was the relationship between the promisors at the time of the agreement?

■ The remaining issue is whether Wight (the Wight Trust) should have been joined as a party at the district court level. Neither S-W Company nor Schwenk raised the issue of joinder be-

fore appeal. In his amicus brief Wight claims, however, that he should have been joined as a party, and it appears that he did not know of the action pending in district court. Under Rule 19(a), M.R.Civ.P., the court is required to join a person subject to service of process if:

Issue II. The court did not err in finding that Driscoll was entitled to receive additional sick leave at the rate of 17.5 days multiplied by $109.46 which is determined pursuant to Article XXIV of the collective bargaining agreement.

The relevant part of the collective bargaining agreement, Article XXIV, Sick Leave, reads:

"* * * In addition, five (5) days per year cumulative to thirty-five (35) days shall be allowed at the difference between $18 per day and the administrator's daily rate of pay. Said daily rate of pay shall be determined by dividing his annual salary or wage by 190."

Pursuant to the quoted language, the district court found and decreed that Driscoll was to receive the additional sick leave pay of 17.5 days in the amount of $1,915.53. The School District asserts this Court should ignore the language "In addition" found in the language contracted for by the parties or, that the Court should give it some type of abortive meaning to deny Driscoll the benefits to which he has a legal right.

The words "In addition" are not ambiguous and should be interpreted in their usual sense. Section 13-710, R.C.M.1947. Black's Law Dictionary, Fourth Edition, contains these definitions:

"Add. To unite, attach; annex; join."·

"Addition. Extention; increase, augmentation."

The district court did interpret these words in their usual sense denoting that something is added to what preceded it.

Clearly, the ruling of the district court is supported by substantial evidence. Roberts' testimony is directly on this point. Even Grant, the Chairman of the Board of Trustees, admitted the School District was "remiss" in not getting other language in the contract if it intended something different by the particular clause. The contract clause itself, as well as the applicable case law cited hereto-

fore, demonstrates without a doubt that the district court's finding, conclusions and judgment should not be disturbed.

Issue III.   The court did not err in finding the School District owed to Driscoll $4,036 pursuant to the consultant contract entered into by and between the parties.

Maurice Driscoll was a teacher and administrator in School District No. 1 for approximately 35 years. In February 1975, he advised the School Board he wished to retire on June 30, 1975. His retirement was approved by the School Board which indicated that for the months of March, April, May, June 1975, Driscoll would serve as a consultant to Dave Keltz, who was named acting director in Driscoll's stead. Driscoll's pay for these four months was to be $2,018 per month.

The only termination notice Driscoll received was a letter written pursuant to action of the Educational Committee indicating his contract had been rescinded. Driscoll then notified the Teamsters Union, Local No. 2 of the letter he received concerning the rescission of the contract, and the Teamsters Union immediately protested the action pursuant to terms of the collective bargaining agreement.

Driscoll continued to serve as a consultant from March until June 30, 1975, advising Keltz, the acting director, and insuring that the orderly transition was accomplished. He received his monthly salary for April, but not for May or June, 1975. Throughout this period (1) Driscoll worked and made himself available on a consulting basis as per his contract, and (2) he maintained his office in the vocational educational building. Further, no one in an official capacity advised him throughout the period of May and June that he should not perform his duties. This was substantiated by Keltz who testified that Driscoll, for the months of May and June 1975, did advise and consult with him and maintained his office until June 30, 1975. On that particular date, the School Board cleared out Driscoll's files, as it was the last day of the contract.

During this entire period Keltz was never officially or otherwise

notified by the School Board, the Superintendent of Schools, or the Clerk of the School District that Driscoll had been fired or that his contract had been rescinded. Again, the only indication that he had in this regard was seeing the letter Driscoll received on the matter, written pursuant to the action of the Education Committee.

We note here that the Board of Trustees, sitting as a School Board, did not take any action at a public regular meeting or a properly called special meeting or at all, relative to the rescission of Driscoll's contract or his firing. In fact, the chairman of the board, Jim Grant, admitted the manner of the attempted discharge did not conform even to the policy of the School Board itself, and that, in fact, it was not normal action to attempt to cancel a contract in this fashion.

Even though the Teamsters Union protested the discharge, there was never a hearing set up pursuant to the terms and conditions of the collective bargaining agreement. Moreover, the attorney for Driscoll, in Driscoll's presence, requested from the School District notice of when the entire Board of Trustees was going to act on the discharge. However, no meeting or hearing was ever set pursuant to contract or law.

The record is clear the letter attempting to rescind Driscoll's contract was not a result of any meeting whatsoever of the School Board, rather it was a product of the Education Committee, meeting as a committee. Thus, the attempted rescission or firing was void since it was in violation of section 75-5930, R.C.M.1947, which provides in pertinent part:

"No business shall be transacted by the trustees of a district unless it is transacted at a regular meeting or a properly called special meeting. * * *"

See: *Wyatt v. School District No. 104*, 148 Mont. 83, 417 P.2d 221.

Consequently, the attempt to rescind the contract and to fire Driscoll are both void. In *Lowery v. Garfield County*, 122 Mont. 571, 584, 208 P.2d 478, the Court said:

"A 'void thing' is no thing; it has no legal effect whatsoever and

no right whatever can be obtained under it or grow out of it. In law it is the same thing as if the 'void thing' had never existed."

Thus, in *Lowery*, even a subsequent act of the legislature could not cure something that was void.

In the probate case of *State v. McCracken*, 91 Mont. 157, 163, 6 P.2d 869, the Court said:

"If the order of July 1, is void, all proceedings founded upon it are ineffective for any purpose. It was open to collateral attack, and may be set aside at any time."

See also: *In re Takahashi's Estate*, 113 Mont. 490, 129 P.2d 217.

As in *Wyatt*, here there was no regularly scheduled or special meeting held by the School Board of Trustees in rescinding Driscoll's contract or discharging him. In *Wyatt*, the teacher also was dismissed without a meeting. The Court in that case found that since the School Board had failed to follow the law in the dismissal of Wyatt:

"* * * the very dismissal was void for want of jurisdiction. No proceedings on appeal could have validated the dismissal that originally was void for want of jurisdiction." 148 Mont. 83, 91, 417 P.2d 221, 225.

The School District cites *School District No. 4, Lincoln County v. Colburg*, 169 Mont. 368, 547 P.2d 84. We find that case not in point since the decision of the School Board was in question there. In the instant case, the School Board did not meet and did not rescind Driscoll's contract.

Further, Driscoll continued to perform and did perform his duties pursuant to contract in the months of May and June, 1975, and was not thwarted in any way whatsoever by the School Board in performing in his official capacity and pursuant to his contract.

We find Driscoll is entitled to his contractual salary for the months May and June, 1975, in the total amount of $4,036. *Wyatt v. School District No. 104*, supra; *Lindgren v. Board of Trustees*, 171 Mont. 360, 558 P.2d 468.

There is substantial credible evidence to support the rulings of the district court and its judgment is affirmed.

MR. CHIEF JUSTICE HATFIELD, and JUSTICES HASWELL, DALY and SHEA concur.